## Case No. 15,698.

### UNITED STATES v. McLELLAN et al.

[3 Sumn. 345.] [1]

Circuit Court, D. Maine. Oct. Term, 1838.

CLAIM BY UNITED STATES—PRIORITY—VOLUNTARY ASSIGNMENT.

1. A conveyance, by a debtor known to be insolvent, of all his property to one or more creditors, in discharge of their own debts and liabilities, not exceeding the amount due to and payable by them, and not for the benefit of the creditors at large, or of any other creditors than the immediate grantees, is not a "voluntary assignment" to creditors, within the purview of the act of 1799, c. 128, § 65 [1 Stat. 676], so as to be affected by the priority of the United States, unless it appear, that it was made with the intent to evade the priority given by the act to the United States.

   [Cited in U. S. v. Griswold, 8 Fed. 501; Bush v. U. S., 14 Fed. 323.]

   [Cited in Jackson v. Davis, 4 Mackey, 198; Weber v. Mick, 23 N. E. 650. Cited in brief in Keiler v. Tutt, 31 Mo. 302; Mussey v. Noyes, 26 Vt. 466. Cited in Peck v. Merrill, Id. 696.]

2. The construction of the act of 1799, c. 128, cannot depend upon the provisions of any particular statute of a state, which does not fall within its very terms.

Bill in equity, brought by the United States against the defendants [Thomas McLellan and others] to enforce the right of priority of payment out of the property of Henry Gooding, an insolvent debtor of the United States. There was, in reality, no dispute as to the facts of this case. On the 22d of June, 1837, Henry Gooding was indebted to the defendant, McLellan, in the sum of $28,609.28, for debts due to McLellan, and liabilities incurred by him for Gooding by indorsing the notes and acceptances of the latter. On that day Gooding executed certain conveyances to McLellan of several parcels of real estate, and certain vessels and parts of vessels and merchandise, estimated at the sum of $27,854.90. McLellan, by a written agreement, then entered into with Gooding, undertook to pay all the notes and acceptances, as they became due, and also to surrender and discharge all the debts then due to him by Gooding. The conveyances were absolute and unconditional. McLellan has since paid all the notes and acceptances, and has faithfully performed the agreement. On the same day Gooding conveyed to the defendant, Moody, certain other real estate, on account of the liabilities of Moody, as indorser for Gooding, to the amount of $10,850; the estimated value of the property so conveyed, being short of that sum by $950, for which Gooding gave his own note to Moody. The latter, by a written agreement of the same date, undertook to pay all the notes, upon which he was so indorser; and he has since punctually discharged them. This conveyance was also absolute and unconditional. McLellan and Moody have since sold the property, so conveyed to them, to other persons. These conveyances were charged by the bill as being all the property which Gooding possessed. The answer did not meet this charge in the bill; and there was no direct, positive proof of the fact. But there was no doubt of the fact; and indeed it was silently assumed in the argument of the defendant's counsel. At the time of these conveyances Gooding was deeply insolvent, owing to other creditors more than fifteen thousand dollars, which yet remained unpaid and unsecured. Gooding was also, at the same time, indebted to the United States on certain custom-house bonds for duties, to the amount of $7822.35; which were payable afterwards in the same year; and upon which judgments have been since recovered, and executions issued, and returned unsatisfied, the judgment debtor, Gooding, being committed to gaol thereon; and having since petitioned the secretary of the treasury for the benefit of the insolvent debtors' acts. The defendants denied, that at the time of the conveyances to them, or at any time until August, 1837, they had any knowledge, information, or belief of Gooding's indebtment to the United States, upon duty bonds, or otherwise.

Mr. Howard, Dist. Atty., for United States.

The statutes of the United States, which secure to them the right of priority, were founded on motives of public policy, to enable the sovereign, or government, to meet and sustain the public burthens. They are therefore entitled to a reasonable and fair construction. That the sovereign should be first paid was a maxim of the common law, a prerogative of the crown. The policy of the common law was intended to be preserved in our own statutes, securing the right of priority to the government, for the public or general welfare. U. S v. Bank of North Carolina, 6 Pet. [31 U. S.] 29.

The statute of 1799, c. 128, § 65, embraces three classes of cases, in which the right of priority is secured to the United States. 1. Where the debtor, not having sufficient property to pay all of his debts, shall have made a voluntary assignment of his property for the benefit of his creditors; or, 2. Where the estate or effects of an absconding, concealed, or absent debtor shall have been attached by process of law; and, 3. Where an act of legal bankruptcy shall have been committed. In the same statute there is also a provision for cases of deceased debtors, which is not material to the consideration of this case. Conard v. Nicholl, 4 Pet. [29 U. S.] 291.

The present case falls within the first or third class of cases contemplated by the statute, and the inquiries are:

I. Had Henry Gooding, the debtor, "sufficient property to pay all his debts," June 22, 1836? Was he insolvent within the meaning of the statute? He then owed, as the case finds, $72,000, and possessed property to the amount of $42,000 only. On that day (June 22, 1836) he transferred all his property to the defendants, McLellan and Moody. He

"had not property sufficient to pay all his debts." This transfer, or assignment, was for the "benefit of his creditors," of certain preferred creditors. The case falls within the meaning of the statute, although not for the benefit of "all" of his creditors. U. S. v. Mott [Case No. 15,826]. Here was a general divestment of all the debtor's property. And "insolvency, in the sense of the statute," say the court, in Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 438, "relates to such a general divestment of property as would in fact be equivalent to insolvency, in its technical sense." "It supposes all the debtor's property has passed from him." U. S. v. Hooe, 3 Cranch [7 U. S.] 73, and in Prince v. Bartlett, 8 Cranch [12 U. S.] 431, the court consider the words "insolvency" and "bankruptcy" as synonymous terms. Gooding, at the time he conveyed all of his property to the defendants, McLellan and Moody, became insolvent within the meaning of the statutes of 1797, c. 74, § 5, and of 1799, c. 128, § 65. And the case finds that the amount, as alleged in the bill, $7,822.35, was due from him to the United States, "on bonds for the payment of duties," at that time.

II. Does the right of priority attach? Is the debt due to the United States to be first paid? The defendants have received all of the insolvent's property, and by the very act by which property, to more than five times the amount of the plaintiff's debt, was passed from him to them, the debtor has been totally divested of property. When the debtor is divested of his property in one of the modes mentioned in the statute, the person who becomes invested with it is thereby made by law a trustee for the United States, and is bound to pay their debt out of the proceeds of the debtor's property. Beaston v. Farmers' Bank of Delaware, 12 Pet. [37 U. S.] 102. The transfer from Gooding to the defendants, in this case, was not an ordinary sale of a portion of the debtor's property, to pay his debts, in the ordinary course of business, as contemplated in the cases: U. S. v. Hooe, 3 Cranch [7 U. S.] 91; U. S. v. Fisher, 2 Cranch [6 U. S.] 358; and Brent v. Bank of Washington, 10 Pet. [35 U. S.] 596. Here the very act of transfer, the assignment, or sale, was in itself an act of insolvency, a divestment of all property, amounting to "insolvency in a technical sense." It may be contended by the defendants, that the bonds in this case were not due, at the time of the alleged insolvency of Gooding. The right of priority extends to bonds due after, as well as before, or at the period of the insolvency. "'Due' is sometimes equivalent to owed or owing;" and duties are due when the importations are made. A debt, debitum in presenti, solvendum in futuro, is revoked by the statute. U. S. v. State Bank of North Carolina, 6 Pet. [31 U. S.] 29.

Mr. Haines, for defendants, argued, that the present was not a case of insolvency and bankruptcy, on the part of Gooding, the debtor, that gave the United States priority. For a construction of the statute of 1799, c. 128, § 65, he referred to Prince v. Bartlett, 8 Cranch [12 U. S.] 431; Conard v. Nicholl, 4 Pet. [29 U. S.] 291; in the latter case, Washington, J., points out what constitutes a case of insolvency and bankruptcy within the statute. Gooding did not make "a voluntary assignment of his property for the benefit of his creditors;" for such an assignment must be the placing all the property of the debtor in the hands of assignees in trust to pay the creditors of the debtor. U. S. v. Mott [Case No. 15,826.] Under the statute of congress 1799, c. 128, § 65, an assignment, which shall let in the United States to priority of payment, must be according to the laws of the state where the assignment is made. But the conveyances of Gooding do not amount to an assignment according to the statute of Maine, of April, 1836. McLellan and Moody were his bonâ fide grantees and vendees. U. S. v. Clark [Id. 14,807]; U. S. v. King [Id. 15,-536]. A bonâ fide conveyance, by a debtor, of his estate to a third person divests him of the property, so that it cannot be made liable to the United States. Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386; Thelluson v. Smith, 2 Wheat. [15 U. S.] 29; U. S. v. Fisher, 2 Cranch [6 U. S.] 358; 1 Kent, Comm. 229, 234. The preference given by law to the United States would be, in the language of Chancellor Kent, "a latent and a dangerous preference," if it were allowed to interpose between an honest purchaser and a vendor who is indebted to the United States. The United States has in no instance a lien upon the debtor's goods and estate for the payment of their debt. The only operation of the statute, giving them priority, is to secure the priority of payment of the debt due the United States out of the assets of the debtor, in the assignees' or trustees' hands. The defendants are not assignees or trustees; but purchasers for a valuable consideration; and if no specific lien attaches to the property conveyed to them, then they are not holden to the United States out of their own estate. Prince v. Bartlett, 8 Cranch [12 U. S.] 431. They did not become invested with the property in either of the modes pointed out by the statute of 1799, c. 128, § 65.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. Taking the case to be, as the parties at the argument have assumed it to be, that the conveyances made to McLellan and Moody respectively were, what they purport to be, bonâ fide conveyances, for a valuable consideration, without any knowledge or belief of the existence of any debts due to the United States, or any intention to defeat the priority of the United States; and that they embraced all the property of Gooding, except what is exempted by

law from attachment and execution, the question arises, whether the priority given to the United States by the act of 1797, c. 74, § 5, or (what in legal effect on this point is the same) by the act of 1799, c. 128, § 65, attaches to the property so conveyed to them. If it does, then the present bill is maintained; if it does not, then the bill must be dismissed. It is unnecessary, after the various decisions, which have been made by the supreme court of the United States upon this subject, to enter at large upon the construction of these sections. By the act of 1799, c. 125, § 65, it is provided, that, "in all cases of insolvency, or where any estate in the hand of the executors, administrators, or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States on any such bond or bonds (for duties), shall be first satisfied." If the clause had stopped here, it would have been open to consideration, whether the insolvency here mentioned was not a mere inability of the debtor to pay all his debts, without any open, notorious act, pointed out by law, to establish such insolvency. But the section goes on to declare—"And the cases of insolvency, mentioned in this section, shall be deemed to extend, as well to cases, in which a debtor not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof for the benefit of his or her creditors; or in which the estate or effects of an absconding, concealed, or absent debtor shall have been attached by process of law, as to cases, in which an act of legal bankruptcy shall have been committed." Now, upon the original interpretation of this act, it might well have been a question, whether the three cases thus put were any thing more than mere illustrations of the general insolvency spoken of in the preceding clauses of the act. But that question has long since been put at rest by the supreme court of the United States in a variety of cases, and especially in Prince v. Bartlett, 8 Cranch [12 U. S.] 431; Thelluson v. Smith, 2 Pet. [27 U. S.] 396; Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 387; Conard v. Nicholl, 4 Pet. [29 U. S.] 291; and Beaston v. Farmers' Bank of Delaware, 12 Pet. [37 U. S.] 102,—in which it has been held, that mere inability of the debtor to pay is not an insolvency within the statute; but that it must be such as is manifested in one of the three modes pointed out in this last explanatory clause. The only mode, applicable to the circumstances of the present case, is, that of "a voluntary assignment thereof for the benefit of his or her creditors." And the question is, whether such an assignment exists in this case. It appears to me, that, consistently with the construction, which has been always put upon this part of the clause, it is not. In the first place, the voluntary assignment, here spoken of, must be, not of a part, but of the whole property of the debtor; unless, indeed, a part is accidentally and unintentionally omitted,

by mistake, or is purposely omitted with a fraudulent design. A debtor may, notwithstanding this clause, bonâ fide convey to a creditor a part of his estate for payment of the debts due to him, or as security for his liabilities; and it will be good and valid against the priority of the United States. This was expressly held by the supreme court of the United States in U. S. v. Hooe, 3 Cranch [7 U. S.] 73; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; and Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386. Now, it is to be considered, that, in the present case, each of these conveyances was made to a single creditor for his own debts or liabilities; and each took, distinctly and severally, for himself alone, the property conveyed to him. Nor is it stated in the bill, or shown in the case, that McLellan and Moody acted in concert together at the time, or that both conveyances were made with a mutual understanding between the parties, that both should be given, or neither; or that the debtor should divest himself of all his property in their favor, or of none. For aught that appears in the case, although the transactions took place on the same day, they may have been perfectly independent and separate transactions, and neither of the creditors may have had any knowledge of the acts of the other. Each of the conveyances embraces a part only of the property of the debtor; and of course, if they are to be treated as separate and distinct transactions, not produced in concert, or uno flatu, with both creditors, for a common purpose, they are clearly good within the authority of U. S. v. Hooe, 3 Cranch [7 U. S.] 73. Mr. Chief Justice Marshall, in delivering the opinion of the court, on that occasion, said: "If a debtor of the United States, who makes a bonâ fide conveyance of part of his property for the security of a creditor, is within the act, which gives a preference to the government, then would that preference be in the nature of a lien from the instant he became indebted, the inconvenience of which, where the debtor continued to transact business with the world, would certainly be great. The words of the act extend the meaning of the word 'insolvency' to cases, where a debtor, not having sufficient property to pay all his debts, shall have made a voluntary assignment thereof for the benefit of his or her creditors. The word 'property' is unquestionably all the property, which the debtor possesses; and the word 'thereof,' refers to the word 'property,' as used, and can only be satisfied by an assignment of all the property of the debtor. Had the legislature contemplated a partial assignment, the words 'or a part thereof,' or others of a similar import, would have been used. If a trivial portion of an estate should be left out, for the purpose of evading the act, it would be considered as a fraud upon the law; and the parties would not be enabled to avail themselves of such a contrivance. But, where a bonâ fide conveyance

of a part is made, not to avoid the law, but to secure a fair creditor, the case is not within the letter or the intention of the act." Now, this language is directly in point to the present case, if we are to take these conveyances as independent transactions; for each embraces a part only of the property of the debtor, and neither of them contains any general assignment. If, therefore, they were not contemporaneous acts, but one was posterior in point of time, and execution to the other, without any intentional connection, the first would at all events be valid, if made bonâ fide, even if the other were invalid, as against the United States, because it conveyed the whole remaining property of the debtor. If they were contemporaneous, concerted acts, then the same question would arise, as if the whole property were conveyed to a single creditor in discharge of his debts and liabilities for the debtor. The bill and answers do not seem framed precisely with a view to this aspect of the case, and therefore there are scarcely facts enough before the court to present it fully.

But let us take the case as if so presented; and the question then comes to this; whether the assignment contemplated by the act is an assignment to one creditor for the payment of his own debts, or as a security or discharge of his own liabilities, or whether it must be an assignment for creditors in general. It appears to me, that the latter is the true and natural, if not the necessary, purport of the words of the act. The assignment is to be a voluntary assignment of all his property "for the benefit of his or her creditors." Now it seems to me that the word "creditors" here is used in contradistinction to a single creditor. If it does not mean all his or her creditors, it at least means a conveyance for more persons than the creditor or creditors, who are the immediate assignees, for their own debts. The language seems to indicate an assignment made to some person or persons as trustees for the benefit of the creditors of the assignor, and not for the sole benefit of the assignees It would be unusual language to speak of an assignment made for the benefit of the grantees only, as an assignment "for the benefit of creditors." If the conveyance were absolute to them, they would take, not as creditors, but as purchasers· not for the benefit of creditors, but for the benefit of themselves, as grantees. It would be still more unusual language to speak of an assignment to the assignees, as a security for the liabilities for the debtor, to be an assignment "for the benefit of creditors." It would be rather an indemnity against the claims of the creditors, and in opposition to them. Indeed, if one were disposed to refine upon the present case, the conveyances were not assignments "for the benefit of creditors," strictly so called; but, to a large extent, they must be deemed to be purchases by indorsers, and securities, upon a collateral contract by them,

to pay the debts, for which they were under liability to the creditors out of their own funds. In Thelluson v. Smith. 2 Wheat. [15 U. S.] 426, the supreme court said: "If, therefore, before the right of preference has accrued to the United States, the debtor has made a bonâ fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a fieri facias, the property is divested of the debtor, and cannot be made liable to the United States." Now, it is observable, that this language was used in a case, where there was a prior lien by judgment upon all the debtor's property. And in that case, as well as in Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386, 441, the supreme court held, that the priority of the United States would not, even where there had been a general assignment for the benefit of creditors, divest an antecedent mortgage or lien for a debt; and that the priority was not itself in the nature of a lien on the debtor's property. He might still convey it bonâ fide to any creditor or purchaser for a valuable consideration, although he should happen at the time to be, in the general sense of the term, insolvent. In this view of the construction of the language and intent of the section of 1799, now in question, I confess myself to be of opinion, that the conveyances in the present case are not voluntary assignments for the benefit of creditors in the sense of that section.

The only doubt, which has occurred to my mind, has arisen from the language used by my brother, Mr. Justice Washington, in his charge to the jury, in the case of Conard v. Nicholl, 4 Pet. [29 U. S.] 291, which was brought under the review of the supreme court, and so far as it was necessary to be considered by that court. that is. so far as it was or might be prejudicial to the plaintiff in error, was affirmed by the court. So far as it laid down the law favorably to the rights of the United States. it was not strictly within the cognizance of the supreme court, and could be reëxamined only upon a writ of error brought by the other party. In the course of his charge Mr. Justice Washington put these questions to the jury, (1.) "Was Edward Thompson (the debtor) insolvent, and unable to pay all his debts at the time when these securities were given to the plaintiff? (2.) Did they divest him of all his property, or, if not, was the part reserved trivial, with the intent to defeat the rights of preference of the United States? If these facts are proved to your satisfaction, then the transfers are to be considered as constructively divesting Edward Thompson of all his property, so as to let in the priority of the United States against the plaintiff." Now, it is observable, that here the learned judge does not put the case upon the mere fact, that the debtor was insolvent at the time of the transfer of the property, and that they covered all the debtor's estate; but he adds the fact, that the

transfers were "with intent to defeat the right of preference of the United States." This latter ingredient is not pretended to exist in the present case; for the debts of the United States were, at the time of these conveyances, unknown and unsuspected by the grantees. So that it is by no means clear, that the learned judge would have deemed an absolute conveyance of all the debtor's property to one or more creditors for the payment of their existing debts and liabilities, to have been, per se, a voluntary assignment within the act, without this ingredient, if the conveyance was not for the benefit of other creditors also. It is also to be observed, that this part of the charge was highly favorable to the United States, and there is no evidence, that it was complained of on the appeal. I have not the slightest doubt, that this part of the charge of the learned judge, as given, was perfectly correct. And if it were shown, or admitted, in the present case, that these conveyances were made with intent to defeat the priority of the United States, I should not hesitate to say, that, as to the United States, they were subject to that priority. But, as has been already remarked, no such intent is set forth in the bill, or established in the evidence. And in the consideration of the case it is not unimportant, that there is a large class of other creditors unprovided for, as well as the United States.

I take the naked question, then, stripped of all unimportant circumstances, to be, whether a conveyance by a debtor, known to be insolvent, of all his property, to one or more creditors, in discharge of their own debts and liabilities, not exceeding the amount due to and payable by them, and not for the benefit of the creditors at large, or of any other creditors than the immediate grantees, is such a voluntary assignment, as is within the purview of the section of the act of 1799? That it is a case within the same mischief, as that against which the act meant to provide, I admit. That if the case had been wholly untouched by authority, there might have been strong ground to contend, that the three cases put in the act were rather illustrations of the meaning of the word insolvency, as used in the act, than exclusive limitations of its meaning, I also admit. But, looking to the decisions which have been made, I do not feel warranted in saying that such conveyances as the present are voluntary assignments for the benefit of creditors within the meaning of the act, unless, indeed, it could be shown that they were made with the intent to evade the priority given by the act. I have not thought it necessary to rely on the act of the state of Maine, of April, 1836, respecting general assignments; because, after all, the construction of the act of 1799, c. 128, cannot depend upon the provisions of any particular statute of a state, which does not fall within its very terms. But this state act does in its provisions point to classes of cases, which seem to me to be the very cases, which the act of 1799, principally, if not exclusively, contemplated in the clause which has been under our consideration. Upon the whole, my opinion is that the bill ought to be dismissed.

UNITED STATES (McLELLAN v.). See Case No. 8,895.