CHARLES F. SMALL *vs.* FRANKLIN MINING COMPANY & another.

To pay an assessment laid on his shares in a corporation, the payee of two checks drawn on banks by third persons, payable to his order, for an amount exceeding in the aggre- gate the amount of the assessment, but neither check alone being equal thereto, indorsed the checks to the treasurer of the corporation, and said that they were "all right;" and the treasurer gave him a receipt for the assessment and paid him the balance in money. One of the checks was good when the payee took it, ten days before; but on the day when it was thus indorsed the drawer had failed, which the payee did not know till two days afterwards. The treasurer deposited the checks in bank for collection, and this

Small *v.* Franklin Mining Company & another.

one was returned in regular course of business, payment thereof having been refused. It was not protested, nor was any formal notice given to charge the payee as indorser; but four days after it was thus returned the treasurer sent it to the payee at his place of business in the same city, with a request for him to make it good, with which he refused to comply. *Held,* that the assessment was not fully paid.

BILL IN EQUITY filed October 17, 1867, for an injunction on the Franklin Mining Company, a corporation under the law of Michigan, and Charles Emery, its treasurer, against selling forty-five shares, owned by the plaintiff in its capital stock, for alleged nonpayment of an assessment of five dollars per share, or $225 in all, laid thereon by the directors, which the plaintiff alleged that he had paid. The answer (on which issue was joined,) denied full payment of the assessment by the plaintiff.

At the hearing, before *Wells,* J., it was agreed " that the defendants were entitled to proceed to sell the shares unless the transactions on June 18, 1867, should be held to have the effect of a payment of said assessment," which transactions appeared in evidence as follows : About four o'clock on the afternoon of that day the plaintiff called at the office of the treasurer of the corporation in Boston to pay the assessment, and presented to William F. Ward, the clerk then in charge in the absence of the treasurer, two checks payable to the order of the plaintiff and by him indorsed, drawn by Hubbard Brothers & Co. and John R. Williams respectively on banks in Boston. The check of Williams was for $201.20, and bore date of June 8, on which day it was received by the plaintiff from Williams in payment for goods sold, and had been held by the plaintiff ever since without presentment at the bank. The check of Hubbard Brothers & Co. was for $99.80. Ward testified : " I did not want to take the checks of outside parties. Small said it was all right, and 1 took it." Ward took the checks, and gave the plaintiff in return $76 in money, and the following receipt: " Boston, June 18, 1867, Received of Charles F. Small two hundred and twenty-five dollars, 6th assessment, Franklin Mining Co. Charles Emery, Treasurer, per William F. Ward." On June 8 Williams was in good business standing. On June 18 Williams failed, and his notes went to protest; but the plaintiff supposed the check to be good at that time, and did not hear of the fail

ure until June 20. On June 19 Ward deposited both checks in bank, and in regular course of business the check of Williams was returned, payment thereof having been refused. No protest of it was made, nor was any formal notice sent to the plaintiff as indorser; but a few days afterwards (on June 26, according to the testimony of the plaintiff; and, according to the testimony of Ward, four days after the check came back, and as soon as he found out the plaintiff's place of business,) a messenger was sent by the defendants to the plaintiff with the check, and with information that payment of it had been refused, and a request to make it good; with which request the plaintiff declined to comply. The plaintiff was a provision dealer in Boston, and his name and place of business were published in the city directory.

The case was reserved for the determination of the full court, on the bill, answer, and a report of the evidence; the preliminary injunction to be made perpetual, if the court should be of opinion that the defendants had no right to sell the shares for nonpayment of the assessment, otherwise the bill to be dismissed.

*H. C. Hutchins,* for the plaintiff. 1. Negotiable checks are deemed payment in Massachusetts, unless the contrary is shown *Barnard* v. *Graves,* 16 Pick. 41. *Melledge* v. *Boston Iron Co.* 5 Cush. 158, 170. The check of Williams indorsed and delivered by the plaintiff was negotiable, and was in the nature of a new security to the defendants. The receipt of the defendants was absolute. The checks delivered were in excess of the amount due for the assessment; and, to the extent of such excess, must be considered as purchased by the defendants. The relations of the parties were thereby changed; and there was no claim upon the plaintiff afterwards, except by virtue of his indorsement of the check of Williams.

2. The defendants were under no obligation to take the check; but, having elected to do so, they became bound to present it seasonably for payment, and to give to the plaintiff seasonable notice of its nonpayment. Not having done this, they thereby made the check their own. *Taylor* v. *Wilson,* 11 Met. 44, 51.

3. It is not pretended that the defendants now have any claim upon the plaintiff by virtue of his indorsement of the check. To permit them to sell the stock of the plaintiff would be to allow them to do indirectly what they cannot do directly.

*J. M. Keith,* for the defendants.

CHAPMAN, C. J. The plaintiff contends that his assessment has been paid by the indorsement and delivery of the check of Williams to the defendants' clerk, and the subsequent conduct of the clerk in respect to it. The plaintiff had held the check for several days without presentment or inquiry, believing it to be good, and represented to the defendants' clerk that it was all right. It was presented for payment on the next day, and this presentment was seasonable. The drawer had failed, and his paper had gone to protest on the day when the plaintiff passed it to the defendants' clerk. It was not therefore all right, as he represented it to be ; that is, it was not a check which would be paid on due presentment at the bank. It was a different thing in substance from what either party supposed it to be ; as much so as the bill of a broken bank which is passed and received as current.

The plaintiff was not entitled to such notice as must be given upon the dishonor of a bill of exchange. He was at most entitled to such reasonable notice as would save him from loss. It does not appear that the delay to give him notice, which was of a few days only, occasioned any damage to him, or that the value of the check was lessened.

There is no reason why the defendants should be enjoined from the collection of their assessment.

*Bill dismissed, with costs.*