RICHARDS S. ROBERTS, Survivor, etc., Appellant, *v.* AARON A. FISHER and others, Respondents.

The defendants being indebted to the plaintiff for goods sold, gave him the promissory note of a third person, which was received by him in full payment and discharge of the debt. The maker of the note was insolvent at the time of the transfer of the note, though this fact was unknown to the parties.—*Held*, that it was a case of mutual mistake of fact, and that the plaintiff was entitled to recover from the defendants his original debt.

(Argued December 2, decided December 13, 1870.)

APPEAL from the judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment for the defendants at the New York circuit. The plaintiff sued to recover an alleged balance of account for goods

sold and delivered, amounting to $357.75. The defendants set up as a defence, that the plaintiff had received the note of Homer Rice & Co., in full payment and discharge of the debt. This fact was found by the jury, the court leaving it to them as the only question for them.

It appeared that the defendants were merchants in Connecticut, and were in the habit of purchasing goods of the plaintiff doing business in New York city. It was a part of their arrangement with the plaintiff, that he was to take paper of third persons in payment. And, in fact, it was the practice for the defendants to suggest paper to the plaintiff for his approval, and if he, after making inquiries, approved of it, to deliver it to him in payment. The note of Rice & Co., a Boston house, was proposed about the 13th of April, the note delivered the 17th, and Rice & Co. had stopped payment on the 16th. At the time of the transfer of the note, the insolvency of Homer, Rice & Co. was unknown to either party.

The cause was tried before a jury at the New York circuit when the judge charged the jury, that the insolvency of Homer Rice & Co was a matter of no importance in the case, in the absence of proof that the defendants had knowledge of such insolvency at the time of the transfer of the note. The jury rendered a verdict for the defendants, on which judgment was entered, and an appeal taken therefrom to the General Term where such judgment was affirmed.

From the judgment entered upon the decision of the General Term this appeal was taken.

*N. B. Hoxie,* for appellant, cited *Owenson* v. *Morse* (7 D. & E., 64); *Lightbody* v. *Ontario Bank* (11 Wend., 15); S. C., 13 Wend., 100; *Tobey* v. *Barker* (5 Johns. R., 58, 72); *Muldoon* v. *Witlock* (1 Cow., 290, 303); *Crane* v. *McDonald* (45 Barb., 354); *Higby* v. *N. Y. & H. R. R. Co.* (3 Bosw., 497, 504); *Weadon* v. *Olds* (20 Wend., 174); *Leger* v. *Bonaffe* (2 Barb., 475); *Baldwin* v. *Van Deusen* (37 N. Y., 487); *Roget* v. *Merritt* (2 Caines R., 117); *Benedict* v. *Field* (16 N. Y., 595).

*Samuel Hand*, for respondent, cited *St. John* v. *Purdy* (1 Sanf. S. C. R., 9); *Conkling* v. *King* (10 N. Y. R., 440); *Graves* v. *Friend* (5 Sanf. S. C. R., 568); *Powell* v. *Jones* (42 Barb., 27).

By the Court—PECKHAM, J.  The sole question presented to the jury and decided by them was, whether the note of Rice & Co. was delivered and received, so far as it went, in payment of plaintiffs' account.  The jury decided it was, and so found for defendants.  The learned justice in his charge, suggested that the jury might look at the course of business, at the arrangement between the parties to receive on account of plaintiffs' demands, notes of defendants' customers, to aid them in deciding whether this note was received in payment.

The verdict of the jury establishes the fact, that this note was received by the plaintiffs in payment of a precedent debt.  It establishes nothing more.  At the time it was so received, the makers had already stopped payment, utterly failed, and nothing whatever was ever realized from them upon the note.

Under such circumstances who must sustain the loss?  Upon whom does the law cast it?

This loss, be it observed, had already occurred when the note was received.  The agreement to take it, made on the 13th, at most, operated merely as an accord with no satisfaction (2 Barb., 475).  Until the 17th there was no satisfaction.  In fact, so far as the case shows, there was no binding obligation, either to deliver or to receive that particular note until it was delivered on the 17th.  Until then either party could have refused to deliver or to receive that note; and confessedly, the account was not paid.  The question here then is as first stated; who must sustain this loss, the note being received in payment on the 17th?

Upon broad principles of justice, it would seem that a man should not be allowed to pay a debt with worthless paper, though both parties supposed it to be good.

Here, when this loss occurred, the note was the property of the defendants. Why should they not bear their own loss? They seek to pay a debt they honestly owe with that loss, with that worthless paper. Assuming the integrity of both parties, it seems equitable and just that defendants should sustain the loss that occurred while they were bearing the risk, while the note was yet at the risk of no one else.

If A sell to B a horse on a farm, and gets his pay by note, the horse being considered as delivered there, and it turns out contrary to the expectation of both, that the horse was accidentally killed on the day before the sale, it would scarcely be pretended that A could recover upon the note; yet it is difficult to distinguish the cases in principle.

We think this is healthful morality as well as good law. In most cases the possessor of the note is presumed to know more about its value, and the condition of the parties to it than a stranger.

Generally, we should suppose that a merchant would know more about the responsibility of his own customers than another living in another State. This rule will prevent sharp traders from imposing upon the unwary as well as save owners of worthless notes from temptation.

We do not intend to say that the parties could not have agreed that this note should be received in payment whether the makers had failed or not, or even if they had failed. But that is not this case.

The parties made this contract in ignorance of a material controlling fact, viz., the insolvency of Rice & Co. Had that been known to the plaintiffs, it is quite clear they would not have accepted this note; the contract would not have been made.

Had it been known to the defendants (as the proof shows it was not), the transfer of the note would have been a fraud upon the plaintiffs, and would have avoided the contract. Both being ignorant of such a fact the plaintiff is allowed to rescind the contract in the courts of this State.

These principles seem to be sustained broadly in the language of the court, and the cases are quite analogous to this.

In *Marble* v. *Hatfield* (2 John., 455), it was held that a payment for cattle sold, of a forged bank note with other good ones, was to that extent no payment, and the vendor might treat it as a nullity and recover for his cattle.

KENT, then Ch. J. (after citing a case from Esp. Cases 3, much like this as to payment and insolvency, and where it was held to be no payment), remarked that "whether it be the promissory note of an individual or of a corporation can make no difference."

In *Lightbody* v. *Ontario Bank* (11 Wend., 11), a payment had been made in the bills of a bank which had stopped payment, though in good credit when the payment was made, and both parties ignorant of the failure.—*Held*, no payment. This case was afterwards unanimously affirmed in the Court of Errors (13 Wend., 101).   See *Leger* v. *Bonaffe* (2 Barb., 475), where a party purchased bills of exchange on a foreign house which had then failed, unknown to the parties here, and paid for them in notes of third persons.—*Held*, that the purchaser might rescind the purchase, as founded in mutual mistake, and that he could reclaim his notes.

In *Baldwin* v. *Van Deusen* (37 N. Y., 487), defendant sold a note of one Onley, as genuine, who it was subsequently ascertained was an infant, a mutual mistake.—*Held*, that this gave the right of rescission to the plaintiff "upon the discovery of the mistake."

The judgment should be reversed and a new trial granted, costs to abide the event.

All the judges concurring in the reversal, judgment reversed and new trial granted.