ISAAC HECHT & others *vs.* ALFRED H. BATCHELLER
& another.

Suffolk.    March 16, 1888. — June 23, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Contract of Sale — Promissory Note — Insolvency of Maker — Mistake —
Failure of Consideration — Warranty by Broker — Usage.*

The owner of a promissory note sold it through a broker shortly after the maker
    made an assignment for the benefit of creditors, neither seller, nor buyer, nor
    broker knowing that fact, but all supposing that he was still doing business;
    and it was agreed that such sales through brokers "are confined to the paper
    of persons actually carrying on business, in other words it is the universal cus-
    tom of such brokers not to offer for sale the paper of any person whom they
    have reason to believe to have failed or made an assignment." *Held,* that there
    was no such mistake as to the subject matter of the sale as to avoid the
    contract, and that there was no implied warranty that the note was that of a
    solvent firm.

CONTRACT for money had and received.    At the trial in the
Superior Court, without a jury, before *Mason,* J., the following
facts were agreed.

On or about November 1, 1886, the defendants, composing a
firm of boot and shoe manufacturers in Boston, sold to J. and S.
B. Sachs of Cincinnati, Ohio, certain boots and shoes, and re-
ceived in payment from that firm a promissory note, dated No-
vember 3, 1886, and signed by it.    The defendants, in the usual
course of business, placed the note with a firm of brokers in
commercial paper, with directions to sell it, and such brokers,
at about one o'clock P. M. on November 27, 1886, sold the note
to the plaintiffs, who had been in the habit of buying commercial
paper, including that of J. and S. B. Sachs.    Neither the defend-
ants nor any one in their behalf indorsed the note, or made any
representations in respect thereof, other than such as may be
implied or inferred from the facts stated.    Neither the plaintiffs,
nor the defendants, nor the brokers, had at the time of the sale
of the note any knowledge about the solvency or insolvency, or
the continuance in business, of the makers of the note, further
than what was known generally to the business community of
Boston at the time, and both the plaintiffs and defendants knew

the financial standing of J. and S. B. Sachs as given by the mercantile agencies.

About two hours before the sale of the note to the plaintiffs, the firm of J. and S. B. Sachs failed, and made a voluntary assignment of all their assets for the benefit of their creditors, to be administered under the insolvent laws of Ohio, which assignment was duly recorded. J. and S. B. Sachs at the making of the assignment ceased to do business, and have not since resumed business, being able to pay only a percentage upon their debts. At the time of the sale of the note, no one of the defendants, nor any one of the plaintiffs, nor the brokers, knew, or had any reason to believe, that J. and S. B. Sachs had failed or made an assignment, or ceased to do business; but, on the contrary, they all supposed or believed that the firm was then doing business at Cincinnati as theretofore. The business of buying and selling business commercial paper is an extensive one in Boston, and is largely conducted through brokers. The transactions in commercial paper so conducted through brokers, including the brokers in question, are confined to the paper of persons actually carrying on business; in other words, it is the universal custom of such brokers not to offer for sale the paper of any person whom they have reason to believe to have failed or made an assignment. The plaintiffs would not have purchased the note if they had known that J. and S. B. Sachs had failed or made an assignment, nor would the defendants or the brokers, if they had known of the failure, have sold it to the plaintiffs without disclosing the fact to the plaintiffs, unless it appeared that they already knew it.

The parties, about two hours after the sale of the note, learned for the first time that J. and S. B. Sachs had failed, and immediately thereafter offered to return the note to the defendants, and demanded a return of the money paid by them therefor, claiming that the money had been paid under a mistake; but the defendants declined to take back the note and repay the money, claiming that there was no mistake, and that the sale was valid. Between the time that the note was delivered to the plaintiffs and the time that they offered to return it to the defendants, there was no change in the affairs of J. and S. B. Sachs, or of the parties to this action, which would prevent their

being restored to the same position that they were in before the sale, other than as stated. Subsequently the plaintiffs delivered the note in question to J. and S. B. Sachs, upon part payment thereof.

The case was submitted to the court upon such of the above facts as were legally relevant or material, with a right to draw such inferences as a jury might draw therefrom; and if, upon such facts as are material and relevant, and the inferences therefrom drawn, the court was of opinion that the plaintiffs were entitled to recover, judgment was to be entered for them for the balance due on the note; otherwise, for the defendants.

The defendants requested the judge to rule as follows: " 1. Upon the agreed facts, judgment should be for the defendants in this action. 2. From the agreed facts as stated, there are no inferences of further facts which the court or jury could or ought to draw. 3. If the court finds that neither the plaintiffs nor the defendants at the time of the sale of the note spoke of, or inquired about, or knew anything relative to the then continuance in business of the makers of the note, and that during the transaction the plaintiffs and defendants both stood upon an equal footing, judgment should be for the defendants."

The judge refused so to rule, but ruled as follows: " 1. If the court finds that the defendants, through their agents, sold the note to the plaintiffs, as and for the note of a firm then doing business, and not as the note of a firm which had already failed, the plaintiffs are entitled to recover. 2. If the court finds that the defendants intended to sell, and supposed they were selling, and the plaintiffs intended to buy, and supposed they were buying, the note of a firm then carrying on business, and not the note of a firm which had already failed and made an assignment, the plaintiffs are entitled to recover. 3. If the court finds that, under the circumstances of the sale, the note was warranted as being the note of a firm then doing business, and not the note of a party that had failed or made an assignment, the plaintiffs are entitled to recover. 4. If the court finds that, under the circumstances of the sale, the note was represented as being the note of a firm then carrying on business, and not the note of a party that had failed or made an assignment, the plaintiffs are entitled to recover."

The judge found for the plaintiffs; and the defendants alleged exceptions.

*T. B. King*, for the defendants.

*L. D. Brandeis*, for the plaintiffs.

MORTON, C. J. The defendants, being the owners of a promissory note which they had taken in the ordinary course of business, sold it through brokers to the plaintiffs. It was afterwards ascertained that, two hours before this sale, the makers of the note had made a " voluntary assignment of all their assets for the benefit of their creditors, to be administered under the insolvent laws of Ohio," of which State they were residents. Neither of the parties to this suit, nor the brokers employed by the defendants, knew of the assignment at the time of the sale, but they all supposed that the makers were doing business as theretofore. The plaintiffs contend that they are entitled to recover upon either of two grounds : first, that there was a mutual mistake of the parties as to the thing sold, and therefore no contract was completed between them ; and, secondly, that there was a warranty, express or implied, by the defendants, that the makers of the note were then carrying on business, and had not failed or made an assignment.

1. It is a general rule, that, where parties assume to contract, and there is a mistake as to the existence or identity of the subject matter, there is no contract, because of the want of the mutual assent necessary to create one; so that, in the case of a contract for the sale of personal property, if there is such mistake, and the thing delivered is not the thing sold, the purchaser may refuse to receive it, or, if he receives it, may upon discovery of the mistake return it, and recover back the price he has paid. But to produce this result the mistake must be one which affects the existence or identity of the thing sold. Any mistake as to its value or quality, or other collateral attributes, is not sufficient if the thing delivered is existent, and is the identical thing in kind which was sold. *Gardner* v. *Lane*, 9 Allen, 492. *Gardner* v. *Lane*, 12 Allen, 39. *Spurr* v. *Benedict*, 99 Mass. 463. *Bridgewater Iron Co.* v. *Enterprise Ins. Co.* 134 Mass. 433. Benjamin on Sales, § 54.

In the case at bar, the subject matter of the contract was the note of J. and S. B. Sachs. The note delivered was the same

note which the parties bought and sold. They may both have understood that the makers were solvent, whereas they were insolvent; but such a mistake or misapprehension affects the value of the note, and not its identity. *Day* v. *Kinney*, 131 Mass. 37. In *Day* v. *Kinney*, the makers of the note sold were in fact insolvent, but they had not stopped payment or been adjudged insolvent, and the decision is confined to the facts of the case. But we think the same principles apply in this case. The makers of the note had made an assignment for the benefit of their creditors, but this did not extinguish the note, or destroy its identity. It remained an existing note, capable of being enforced, with every essential attribute going to its nature as a note which it had before. Its quality and value were impaired, but not its identity. The parties bought and sold what they intended, and their mistake was not as to .the subject matter of the sale, but as to its quality. We are therefore of opinion, that the sale was valid, and that the plaintiffs cannot recover the amount they paid, as upon a failure of consideration.

2. The other question is one of some difficulty, created in part by the manner in which the case is brought before us. The case was submitted to the Superior Court upon an agreed statement of facts, "with a right to draw such inferences as a jury might draw therefrom." The court found for the plaintiffs, but upon what ground does not appear. If upon the facts stated, and any inferences of fact which the court might reasonably draw therefrom, its finding can be justified, this court cannot revise its finding. *Old Colony Railroad* v. *Wilder*, 137 Mass. 536.

When a man sells a note, the law implies a warranty that it is genuine, and that he has such a title as to give him the right and power to sell it. *Lobdell* v. *Baker*, 1 Met. 193. *Cabot Bank* v. *Morton*, 4 Gray, 156. *Merriam* v. *Wolcott*, 3 Allen, 258. This is upon the ground that the offer of the note is in itself a tacit affirmation or representation that it is genuine, and that the proposed seller has a right to sell it, and from such affirmation the law implies a warranty, which enters into the contract. But it is settled that he does not warrant the solvency of the maker. *Day* v. *Kinney*, *ubi supra*. *Burgess* v. *Chapin*, 5 R. I. 225. *Beckwith* v. *Farnum*, 5 R. I. 230. Applying these

principles to this case, if the brokers who acted for the defend-
ants at the time of the sale made any express or tacit represen-
tations that the note was a note of a firm then in business, which
the parties understood as forming part of the contract, and the
plaintiffs relied upon it, it might, in law, amount to a warranty
that the note was as they affirmed it to be. But the difficulty of
the plaintiff's case is, that there was no warranty in terms, and
there are no facts agreed which justify an inference that the
parties intended any such warranty as a part of the contract.
The fact that both parties supposed and believed that the
makers continued in business, is immaterial. In the sale of a
horse, both parties may believe the animal is sound; probably,
in most cases of the sale of notes, both parties believe and un-
derstand that the maker is solvent, but no warranty can be
implied or inferred from that fact. So the facts that the plain-
tiffs would not have bought, and the defendants' brokers would
not have sold without disclosing the facts to the purchaser, if
they had known that the maker had failed, are immaterial.

It is recited in the facts agreed that the transactions of buying
and selling commercial paper conducted through brokers " are
confined to the paper of persons actually carrying on business."
If the statement had stopped here, it might imply that there
was a usage of brokers not to sell paper of makers who had
failed, and that an intending purchaser had the right to rely
upon the offer by the broker of a note for sale as an affirmation
that the note offered was the note of a man or firm then in
business. But the statement goes on in explanation of its
meaning as follows : " In other words, it is the universal cus-
tom of such brokers not to offer for sale the paper of any person
whom they have reason to believe to have failed or made an
assignment." As thus explained, it goes little farther than to
prove that it is the custom of brokers not to commit a fraud by
concealing facts known to them. It does not go far enough to
show any usage to warrant the note of any person, when the
broker has no reason to believe that he has failed.

The plaintiffs rely upon the case of *Harris* v. *Hanover Bank*,
15 Rep. 390, in which the question here raised was decided in
their favor. We think that case is in conflict with the weight
of the authorities. In that case the court relies upon the au-

thority of *Roberts* v. *Fisher*, 43 N. Y. 159, but that is a case of the payment of a debt by a worthless note. There are cases like *Roberts* v. *Fisher*, where it has been held that, if one pays a debt by a worthless note, draft, or check, the debt is not extinguished. *Small* v. *Franklin Mining Co.* 99 Mass. 277. *Weddigen* v. *Boston Elastic Fabric Co.* 100 Mass. 422. The distinction between such a transaction and the sale of a note in the market, is obvious. Where a man offers a note, draft, or check in payment of a bill, unless something is said to the contrary, he offers it as an equivalent for money, and thus tacitly represents that it is as good as money. But the offer of a note for sale, without recourse to the seller, does not involve any representation as to the solvency of the parties to it, or as to its value.

We think the principles we have stated are decisive of the case before us. The defendants sold the note in good faith. So far as the evidence shows, neither party, at the time of the sale, spoke of, or inquired about, or knew anything about, the failure of the makers. They stood upon an equal footing, and they had equal means of knowing the standing of the makers. It was understood that the defendants were selling the note without recourse to them. They did not expressly warrant the value of the note, and we are of the opinion that from the circumstances no warranty could fairly be inferred of the solvency of the makers, or that they continued to do business.

We are therefore of opinion, that the first three instructions requested by the defendants should have been given, and that, upon the facts of the case, the court was not justified in finding for the plaintiffs.                    *Exceptions sustained.*