ANDREW C. REGGIO, trustee, *vs.* WINSLOW WARREN, trustee,
& others.

Suffolk.    December 5, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Equity Jurisdiction*, Negligence of plaintiff, Mistake, Unjust enrichment, Rescission.
*Mistake.    Trust.    Unjust Enrichment.*

In a suit in equity seeking to set aside a release signed by the plaintiff, releasing to
the trustees under a certain will all right of the plaintiff to receive any further
payment under the will, under which the plaintiff was a beneficiary and also was
one of three trustees, the bill alleged, that there was due to the plaintiff as a
beneficiary a large sum of money, that the trustees had not the required money
on hand and could not raise such a sum for immediate payment without serious
loss to the trust estate, that the plaintiff and his co-trustees all believed that,
under the circumstances then existing, the trustees had full power, with the con-
sent of the plaintiff, to retain for the purposes of the trust a large part of the
money due to the plaintiff and to pay to the plaintiff the amount due to him
partly in cash and the larger part by a promissory note signed by the three
trustees bearing interest at a stated rate, that this was done, and that the plain-
tiff executed the release in question to the trustees, but that afterwards, by a
decision of this court, the trustees learned that the note given by them to the
plaintiff was void because they had no right to make it.  The plaintiff sought to
have the release which he had signed cancelled, in order that he might receive
the balance of the money due to him which the trustees could not pay him law-
fully upon the note.  The defendants demurred, and contended that the bill on
its face showed negligence in the plaintiff, inasmuch as he did nothing to ascer-
tain by his own investigation the facts upon which his rights depended or to
determine what his rights were but relied merely on the assurances of his
co-trustees.  *Held*, that it could not be said that the bill showed such negligence
on the part of the plaintiff as to preclude him from obtaining relief.

Discussion by SHELDON, J., of the exceptions to the rule that equity will not grant
relief to avoid the results of a mutual mistake of law.

One, who innocently has left in the hands of the trustees under a will, as part of a
trust fund, money to which he legally was entitled and the payment of which he
could have enforced, and in exchange therefor has received a promissory note of
the trustees bearing interest at a fixed rate, which afterwards turns out to be
void because the trustees had no right to make it, but which both he and the
trustees believed to be valid and binding, and who on receiving the note has
given to the trustees a release and discharge, running both to them and to the
trust estate, from all liability except upon such note, upon discovering the inva-
lidity of the note and filing a bill in equity against the trustees, can avoid or re-
scind his release and obtain the money or the part of the trust fund which was
his rightful due, where it appears that the trust estate has parted with nothing
of value in or by reason of the transaction and that the only effect of refusing
the relief asked for will be to deprive the plaintiff of the money to which he had
the lawful right and which all the parties supposed that they had secured to

him by what they had done and correspondingly to enrich the trust fund at his expense and furnish for the beneficiaries in remainder a large amount of money, to which they have no claim and to which it never was intended by anybody that they should acquire any claim.

In a suit in equity, by a beneficiary under a will against the trustees under the same will, to rescind a release given by the plaintiff to. the defendants on receiving from them a comparatively small·part, of a large sum of money to which he was entitled, in cash and much the greater part of it in the form of an interest bearing promissory note, which afterwards turned out to be void because the trustees had no right to make it, the fact, that there may have been a partial consideration for the giving of the release in the comparatively small amount of money paid to the plaintiff in cash at the time that the void note for the larger amount was delivered, does not make it impossible to give relief, if the circumstances under which the note was received by the plaintiff and the release was given by him show that he otherwise is entitled to have the release rescinded.

In a suit in equity, by a beneficiary under a will against the trustees under the same will, to rescind a release given by the plaintiff to the defendants on receiving from them a comparatively small part, of a large sum of money to which he was entitled, in cash and much the greater part of it in the form of an interest bearing promissory note, which afterwards turned out to be void because the trustees had no right to make it, where it appears that before the invalidity of the note was discovered the defendants had made a part payment upon it to the plaintiff, it is not necessary for the plaintiff, in order to entitle himself to a decree for the rescission of the release, to offer to return the money which he received in cash at the time he gave the release or that which was paid to him later as a part payment on the void note, as both of these sums of money belonged to him, irrespective of the validity of the note, and he need not go through the vain ceremony of repaying or offering to repay these sums, which, if repaid, it would at once become the duty of the defendants to return to him with a much larger additional sum.

A beneficiary of a trust under a will, who also is one of three trustees under the same will, does not lose any of his rights as a beneficiary on account of a loss incurred by the trust estate by reason of a mistake of judgment of the trustees, in which he shared as a trustee but for which neither he nor the other trustees were liable under the terms of the trust.

BILL IN EQUITY, filed in the Supreme Judicial Court on December 9, 1909, by a legatee under the will of Andrew Carney, who also was one of the trustees under that will, against his cotrustee, seeking to set aside a certain release executed by the plaintiff and to have paid to the plaintiff the share of the estate to which he would have been entitled had the release not been executed.

The allegations of the bill were as follows:

1. That the defendant, Winslow Warren, was duly appointed trustee under the will of Andrew Carney, deceased, by the Probate Court for the county of Suffolk in 1887, and has been at all times since, and now is, one of the trustees of that estate.

2. That the plaintiff, Andrew C. Reggio, was duly appointed a trustee under the will of Andrew Carney, deceased, of Boston by a decree of the Probate Court of the county of Suffolk in 1891, and has been at all times, and now is, such trustee.

3. That at the time of the acts complained of Joseph A. Laforme, late of Boston, was the third trustee, and was appointed by a decree of the Probate Court under the terms of the will of the late Andrew Carney; that Joseph A. Laforme continued as trustee of the estate up to the time of his death in 1905.

4. That the sole trustees of the estate under the will of the late Andrew Carney now are Andrew C. Reggio and Winslow Warren.

5. That Andrew Carney died on April 3, 1864, after making a will and codicil, which were duly approved and allowed by a decree of the Probate Court in and for the county of Suffolk on April 25, 1864.

6. That Andrew Carney, by this will and codicil, gave property in trust for his adopted daughter, Pamelia J. Reggio, and her three children, Josephine Elizabeth Reggio (afterwards Josephine Elizabeth Pazolt), Mary Frances Reggio (afterwards Mary Frances Rhodes), and Andrew Carney Reggio, each to have one quarter income for life, with remainders over to their respective children or the issue of deceased children taking by right of representation.

7. That, under the will, Andrew C. Reggio should have in fee one half of one quarter of that portion of the estate given him for life, if he should so request in writing after he became of age; and that, said Reggio having made the request, the one half of that one quarter was conveyed and transferred to Andrew C. Reggio in 1888.

8. That Josephine Elizabeth Pazolt died in June of 1899; and on May 16, 1901, in accordance with the will, her share of the property was distributed in equal shares to her two sons, Arthur N. and Alfred J. Pazolt.

9. That Pamelia J. Reggio died in April of 1902, and, in accordance with the terms of the will, her portion of the trust estate should be distributed in the following proportions: two fifteenths to Andrew C. Reggio, two fifteenths to Mary F.

Rhodes, one fifteenth to Arthur N. Pazolt, and one fifteenth to Alfred J. Pazolt.

10. That on or about January 1, 1903, the trustees determined that the value of the share held in trust for the benefit of Pamelia J. Reggio was $409,290, so that Arthur N. Pazolt and Alfred J. Pazolt were entitled to receive the sum of $68,215 each, and that Mary F. Rhodes and the plaintiff were entitled to receive $136,430 each.

11. That on or about January 6, 1903, the trustees paid to Arthur N. Pazolt and Alfred J. Pazolt the sum of $68,215 each in cash. The trustees also paid to Mary F. Rhodes and to the plaintiff $16,430 each, and gave to each a promissory note, whereby the estate of Andrew Carney promised to pay, on demand, the sum of $120,000, with interest at four per cent.

12. The note given to Mary F. Rhodes as hereinbefore described has been paid in full.

13. The note given to the plaintiff is now held by him, and is unpaid, either in whole or in part, except as to the sum of $20,000 received by the plaintiff from the trustees as part payment on or about April 1, 1905, which payment was duly indorsed on the note.

14. That up to 1905 Joseph A. Laforme and Winslow Warren were the active trustees of this estate; that Andrew C. Reggio was appointed trustee while abroad in Germany, and continued to live in Germany and in England until the autumn of 1901, when he came to reside permanently in America; and that while thus abroad he was kept informed of trust matters through letters and other communications from the trustees in America.

15. That after coming to America, and for a period including the time of the acts hereinafter complained of, he was not sufficiently familiar with the business matters of the trust to exercise independent judgment on such matters, but during this time conferred with his co-trustees, and, believing in their judgment and wisdom, ultimately agreed with them on such matters as they were agreed upon relating to the administration of the trust.

16. That on or about January 1, 1903, the trustees, Laforme and Warren, represented to the plaintiff, and the fact was, that the trust estate was short of funds to make a distribution of the

Pamelia J. Reggio interest in the trust fund in cash; that to do so they would be obliged to sell property, which could not then be sold advantageously to the interest of the trust estate; that they were also using large sums of money for the construction and erection of what is called the Carney Building, the arrangements for erecting which had been entered into before the death of Pamelia J. Reggio, which arrangements could not be abandoned without great loss to the trust estate; and that the plaintiff was requested to permit his share of the trust fund, which he was entitled to on the Pamelia J. Reggio distribution. to be retained in the trust estate.

17. That the trustees Laforme and Warren assured the plaintiff that under the terms of the will, and under the circumstances then existing, the trustees had the power and authority, the plaintiff consenting, to retain a portion of the trust fund which the plaintiff would be entitled to under the Pamelia J. Reggio distribution, and to give the plaintiff therefor a promissory note binding the trust estate to the future payment of the sum so retained.

18. That on or about February 18, 1903, the plaintiff, relying upon the assurances of the said trustees, consented to let the trustees retain certain funds which he was entitled to on the Pamelia J. Reggio distribution, and the plaintiff accepted from the trustees the sum of $16,430 in cash and received from said trustees a promissory note from the estate of Andrew Carney for the sum of $120,000, the balance due of his portion of the Pamelia J. Reggio distribution, the note being made payable on demand, with interest at four per cent per annum.

19. That thereafter, to wit, on or about February 1, 1905, the plaintiff received from said trustees, as part payment of the money due as represented by the note, the sum of $20,000, which was indorsed on the back of the note, leaving due and payable, as part of the funds due him on the Pamelia J. Reggio distribution, the sum of $100,000, no part of which has been paid.

20. That at or about the same time, to wit, on February 16, 1903, the plaintiff, at the request of the trustees Laforme and Warren, and relying on the assurances of the said trustees as set forth in paragraph 17, executed and delivered a release of all demands against the estate of Andrew Carney arising out of

said distribution; that said release was executed and delivered on the consideration that the plaintiff should receive in exchange therefor a valid and enforceable instrument which should entitle. him to receive from the trust estate the full sum of $120,000, representing, to that extent, his distributive share.

21. That the plaintiff and all of the trustees believed that under the will, and under the circumstances which then existed, the trustees had full power and authority, the plaintiff assenting, to retain, in the manner aforesaid, the sum to which the plaintiff was entitled upon the death of Pamelia J. Reggio, and, instead of distributing the same in cash to the plaintiff, to give the plaintiff a promissory note as aforesaid, which note should be in all respects valid and binding upon the trust estate.

22. That the plaintiff is now informed and believes, and therefore alleges, that the trustees, under the circumstances which existed, had no power or authority to give the note or to enter into such a transaction as hereinbefore described; that the note is unenforceable and void; that the execution and delivery of the note by the trustees, and the execution and delivery of the release by the plaintiff, were due to a mutual mistake of the defendant, said trustee Laforme, and the plaintiff — all the parties acting in the firm belief that they were authorized by the will so to do.

23. That, by reason of such mutual mistake, the consideration for the release has failed so far as the plaintiff's right to receive the sum of $120,000 is concerned, and unless the mutual mistake shall now be duly rectified the plaintiff is in danger of suffering, as a result thereof, the loss of his entire distributive share, to the amount of $120,000, as a penalty for permitting the amount of said distributive share to be retained by the trustees for the benefit of the trust estate, instead of insisting upon the immediate payment thereof, as he otherwise could and would have done.

The prayers of the bill were as follows:

1. That the release be declared void and of no effect and that it be ordered that the same be delivered up and cancelled, the plaintiff being ready and willing on his part to deliver up the note to be cancelled, if the court shall so order.

2. That it be declared that the plaintiff is entitled, as one of the distributees, on the death of Pamelia J. Reggio, to the same

share of the trust estate as if the note and release had never been executed, proper credit being given for any payments made on account of the note.

3. That an account be taken of all payments so made and that the net amount which the plaintiff is entitled to receive as such distributee be determined.

4. For further relief.

On December 13, 1909, the children of Mary Frances Rhodes, named in the bill, filed by leave of court an intervening petition to be joined as defendants. On January 31, 1910, an interlocutory order was made, that they be joined as defendants. The defendants thus admitted to the suit filed an answer, which contained a demurrer, and which, further answering, admitted the facts alleged in the first, second, third, fourth, fifth, sixth, seventh, eighth and tenth paragraphs of the bill, and denied in whole or in part the other allegations of the bill.

*Loring,* J., made an order under Chancery Rule 35 appointing a commissioner to take the evidence to be reported to the full court, and later made the following finding and reservation:

"I find that the facts alleged in the thirteenth, fifteenth, sixteenth, seventeenth, eighteenth, twenty-first, and twenty-second paragraphs of the bill of complaint are true.

" As to the allegations set forth in the twentieth paragraph thereof, I find that the release was executed and delivered on the assumption, in which all parties concurred, that the note then delivered to the plaintiff was a valid and enforceable instrument, which would entitle him to recover from the trust estate $120,000 lent by him to said estate.

" I find that the plaintiff was not negligent in the matter.

"I reserve the case for the consideration of the full court on all the pleadings, evidence, and on these findings."

*J. F. Cusick,* for the plaintiff individually and as trustee under the will of Andrew Carney.

*M. Storey,* for Winslow Warren, trustee.

*E. R. Anderson,* (*G. A. Sweetser* with him,) for Mary Frances Carridia and others, beneficiaries in remainder.

SHELDON, J. We assume, under the language of the reservation, that these remaindermen who at their request have been

admitted as parties defendant, did not waive their demurrer by going to a hearing on the merits.

They contend that the bill upon its face shows negligence in the plaintiff, on the grounds that he did nothing to ascertain by his own investigation the facts upon which his right depended, or to determine what his rights were; that he relied merely on the assurances of his co-trustees, believing in their judgment and wisdom, and now resting upon an allegation that he and " all of the trustees believed that under said will, and under the circumstances which then existed, said trustees had full power and authority, the complainant assenting, to retain, in the manner aforesaid, the sum to which the complainant was entitled, upon the death of Pamelia J. Reggio, and, instead of distributing the same in cash to the complainant, to give said complainant a promissory note as aforesaid, which note should be in all respects valid and binding upon the trust estate." These defendants insist that there is no allegation in the bill that he had a right to rely on or to believe his co-trustees, nothing to show upon what the belief of the trustees or his own belief was based, or to indicate that it was a reasonable belief or one that should have been relied on.

The bill does not proceed upon any allegation of deceit or fraud; and the decisions in which it has been held that there are fraudulent representations of such a character that one cannot be justified in believing them or in acting upon them are not applicable. Even in such cases the strictness of the old rule has been somewhat relaxed, in order that parties guilty of actual fraud may not too easily escape from liability for their wrong doing by setting up the undue guilelessness of their victim. *Way* v. *Ryther*, 165 Mass. 226, 229. *Kilgore* v. *Bruce*, 166 Mass. 136, 138. *Mabardy* v. *McHugh*, 202 Mass. 148, 149, 150, and cases cited.

This bill proceeds purely on the ground of a mutual mistake on the part of persons who were in confidential relations with each other, who were not undertaking to deal with each other at arm's length, and who desired to give to the plaintiff and his sister their legal rights in such a manner as to avoid causing thereby any loss to the body of the trust estate by forcing its property and securities upon a depressed and reluctant market. There was here no violation of any legal duty owed by the

plaintiff to the other parties, his co-trustees, with whom he was dealing; there was nothing to indicate that his acting upon their common belief and refraining from requiring them to pay to him in cash the money to which he was entitled could result, or that it has resulted, in any loss or injury to the trust estate or to these remaindermen. He is not to be charged with any such laches or acquiescence as was found in *Stone* v. *Godfrey*, 5 De G., M. & G. 76. Under more stringent circumstances it could not be said that the bill showed such negligence on his part as to preclude him from obtaining relief. See the cases collected in 2 Pom. Eq. Jur. § 856. The demurrer cannot be sustained on this ground.

These defendants also contend that the mistake set forth in the bill was a pure mistake of law, for which no redress can be given. It is a general doctrine that, as it is the duty of every one to conform his conduct to the requirements of the law, so all men must be treated alike in courts of civil and of criminal jurisdiction, as being aware of the duties and obligations which are imposed· upon them by the law, and that ordinarily one cannot successfully ask for affirmative relief or defend himself against an otherwise well founded claim, on the bare ground that he was either ignorant of the law or mistaken as to what it prescribed. *Powell* v. *Smith*, L. R. 14 Eq. 85. *Rogers* v. *Ingham*, 3 Ch. D. 351. *Freeman* v. *Curtis*, 51 Maine, 140. *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80. *Taylor* v. *Buttrick*, 165 Mass. 547. *Wheaton Building & Lumber Co.* v. *Boston*, 204 Mass. 218, 226.

But it is now well settled that this rule is not invariably to be applied. In some cases where great injustice would be done by its enforcement, this has been avoided by declaring that a mistake as to the title to property or as to the existence of certain particular rights, though caused by an erroneous idea as to the legal effect of a deed or as to the duties or obligations created by an agreement, was really a mistake of fact and not strictly one of law, and so did not constitute an insuperable bar to relief. *Wilcox* v. *Lucas*, 121 Mass. 21, 25. *Livingston* v. *Murphy*, 187 Mass. 315. *Busiere* v. *Reilly*, 189 Mass. 518. *Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212. *Blakeman* v. *Blakeman*, 39 Conn. 320. *M'Carthy* v. *Decaix*, 2 Russ. & M. 614, 621. In other cases, a distinction between ignorance or mistake as to a

general rule of law prescribing conduct and establishing rights and duties, and one as to the private right or interests of a party under a written instrument, has been laid down; and it has been declared that, while relief could not be given by reason of a mistake of the former kind, one of the latter kind shared by both parties to an agreement and resulting in a loss of the rights of one of them, may be set aside at the suit of the injured party, though no fraud was practised upon him. The distinction taken is between the general law of the country, for ignorance of which no one is excused, and private rights which depend upon the existence of particular facts and the rules which the law declares as to those facts. *Cooper* v. *Phibbs*, L. R. 2 H. L. 149, 170. *Beauchamp* v. *Winn*, L. R. 6 H. L. 223. *In re Oliver's Settlement*, [1905] 1 Ch. 191, 197, 198. *State* v. *Paup*, 13 Ark. 129. In other cases, sometimes as the ground of decision and sometimes merely in discussion or argument, it has been said that there is no established rule forbidding the giving of relief to one injured by reason of a mistake of law, but that whenever it is clearly shown that parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without doing injustice to others, equity will afford him redress. *Freichnecht* v. *Meyer*, 12 Stew. 551. *Lawrence County Bank* v. *Arndt*, 69 Ark. 406. *Ryder* v. *Ryder*, 19 R. I. 188. *Hausbrandt* v. *Hofler*, 117 Iowa, 103, quoting and following *Stafford* v. *Fetters*, 55 Iowa, 484, and *Ring* v. *Ashworth*, 3 Iowa, 452. *Snell* v. *Insurance Co.* 98 U. S. 85. To the same effect see *Swedesboro Loan & Building Association* v. *Gans*, 20 Dick. 132, in which the old rule as to ignorance of the law is said to be subject to so many exceptions that it is quite as often inapplicable as applicable; *Williams* v. *Hamilton*, 104 Iowa, 423, in which the court declares it to be well settled that a mistake as to law may under certain circumstances afford ground for relief in equity; and *Allcard* v. *Walker*, [1896] 2 Ch. 369, 381, in which the proposition that relief never can be given in respect to a mistake of law was called inaccurate. So it has been said that the important question was not whether the mistake was one of law or of fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity

that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties. *Park Brothers & Co.* v. *Blodgett & Clapp Co.* 64 Conn. 28. *Blakemore* v. *Blakemore*, 19 Ky. Law Rep. 1619, 1620. *Dinwiddie* v. *Self*, 145 Ill. 290, 305. *Benson* v. *Bunting*, 127 Cal. 532. *United Commercial Travellers of America* v. *McAdam*, 125 Fed. Rep. 358, 368. *Stone* v. *Godfrey*, 5 DeG., M. & G. 76, 90. *Naylor* v. *Winch*, 1 Sim. & Stu. 555, 564. *Re Saxon Life Assurance Society*, 2 Johns. & Hem. 408, 412. This doctrine frequently has been applied to cases of the reformation of contracts; *a fortiori*, it is to be applied to cases in which justice can be obtained only by a complete rescission. *Canedy* v. *Marcy*, 13 Gray, 373. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290, 299. *Griswold* v. *Hazard*, 141 U. S. 260, and cases cited on p. 284. *Carrell* v. *McMurray*, 136 Fed. Rep. 661. Cases in which a release has been either avoided or restricted in its operation by a limitation of its general words rest really upon the same principle. *Ramsden* v. *Hylton*, 2 Ves. Sen. 305. *Lyall* v. *Edwards*, 6 H. & N. 337. *Turner* v. *Turner*, 14 Ch. D. 829. *In re Garnett*, 31 Ch. D. 1. So one who has made an election under a will may rescind it upon proof that he acted under a misapprehension of his legal rights or even in ignorance of the fact that he was bound to make an election. *Watson* v. *Watson*, 128 Mass. 152. *Macknet* v. *Macknet*, 2 Stew. 54. *Pusey* v. *Desbouvrie*, 3 P. Wms. 315, 316. *Salkeld* v. *Vernon*, 1 Eden, 64.

The correct doctrine both upon principle and authority was stated by the Supreme Court of Michigan in *Renard* v. *Clink*, 91 Mich. 1, 3 : " While it is a general rule that equity will not relieve against a mistake of law, this rule is not universal. Where parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, equity will not allow a defense, or grant a reformation or rescission, although one of the parties may have mistaken or misconceived its legal meaning, scope, or effect. . . . But where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, or estates, and enters into some

transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact." And this statement by the court is amply supported by a full and apt citation of cases.

The approved text writers have taken the same view. Kerr (Fraud & Mistake, 4th ed., 467) thus sums up his treatment of the subject: " When, therefore, a man, through misapprehension or mistake of the law, parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit or advantage so acquired." Pomeroy, in his treatise on Equity Jurisprudence, after an elaborate discussion of the question in the light of the decided cases, lays down substantially the same proposition in language which has been cited and approved in many of the decisions already referred to. 2 Pom. Eq. Jur. § 849. And see further the note to 1 Story Eq. Jur. § 111.

These principles are decisive of the present contention. As to this point the bill, reduced to its lowest terms, presents the question whether one who has innocently left in the hands of trustees money, being a part of the trust fund, to which he was legally entitled and the payment of which he could have enforced, and in consideration thereof has received from the trustees merely a void promise that it shall be paid to him from the trust estate in future, with interest at a fixed rate, which promise both he and the trustees believed to be valid and binding, and who thereupon has given to them a release and discharge, running both to them and to the trust estate, from all liability except upon the void promise, can upon discovering the invalidity of the promise avoid or rescind his release and obtain the money or the part of the trust fund which was his rightful due, it appearing that the trust estate has parted with nothing of value in or by reason of the transaction and that the only effect of refusing the relief asked for will be to deprive him of the money to which he had the lawful right, and which all

parties supposed that they had secured to him by what they had done, and correspondingly to enrich the trust fund at his expense and to secure to the beneficiaries in remainder a large amount of money to which they had no claim and to which it never was intended or imagined by themselves or anybody else that they should acquire any claim. The bare statement of this question is enough. We are led irresistibly to the conclusion that the demurrer cannot be sustained upon this ground.

Nor can these remaindermen derive any benefit from such cases as *Tuttle* v. *First National Bank of Greenfield*, 187 Mass. 533, *Loring* v. *Brodie*, 134 Mass. 453, *Dunham* v. *Blood, ante*, 512, or the decisions in which one who has made an unauthorized loan to a city or town has been denied recovery either upon the invalid note which he has taken or upon the money counts by proof that the money had been applied to the use of the town. The case at bar differs from those cases in the fact that here there was not an unauthorized loan to the trustees which created no liability against the trust estate, but there was an antecedent liability of the trust estate to the plaintiff which he might have recovered from that estate by appropriate proceedings and which never has been paid. If he had given no release, the fact that he had accepted a void note for the amount that was due to him would not have prevented him from enforcing the original obligation. *Leonard* v. *First Congregational Society*, 2 Cush. 462, 464. *Small* v. *Franklin Mining Co.* 99 Mass. 277. *Weddigen* v. *Boston Elastic Fabric Co.* 100 Mass. 422. *National Granite Bank* v. *Tyndale*, 176 Mass. 547. *Central National Bank* v. *Copp*, 184 Mass. 328. Nothing now stands in his way but the release which it is the object of his bill to set aside. That differentiates the case from the decisions upon which the remaindermen rely. Of course, so far as the enforcement against the trustees of the note bearing a fixed rate of interest was concerned, the plaintiff did stand in a position similar to that of the plaintiffs in the actions referred to. That is the reason of the language used in the opinion of the court in *Warren* v. *Pazolt*, 203 Mass. 328, in speaking of the transaction as a loan of money upon the note. But that was said with reference merely to the note itself and its enforcement against the trust estate, and not with reference at all to the question now

considered. Whether the trustees could be held personally liable upon the note need not be considered. See *Dunham* v. *Blood, ante,* 512.

We do not doubt that the bill presents a proper case for relief in equity. There needs no discussion or citation of authorities to show this. That there may have been a partial consideration for the giving of the release in the comparatively small amount paid in cash at the same time that the note for a much larger amount was delivered does not under the circumstances make it impossible to give relief. *Johnson* v. *Johnson,* 3 B. & P. 162. Nor does the bill show that it will be impossible upon rescission to put the parties *in statu quo,* as in *Clarke* v. *Dickson,* El., Bl. & El. 148. It was not necessary to offer to return the money which the plaintiff has received. What was paid at and before the giving of the release was rightly paid upon his original demand; what has been paid upon the note should in equity be applied upon the same demand. He need not go through the vain ceremony of repaying or offering to repay these sums, when it at once would become the duty of the trustees to return to him the amount of these payments with a much larger additional sum. And see *Beauchamp* v. *Winn,* L. R. 6 H. L. 223, 232; *Long* v. *Athol,* 196 Mass. 497, 506; *O'Shea* v. *Vaughn,* 201 Mass. 412, 422 *et seq.*

There is no ground upon which the demurrer can be sustained.

What has been said upon the demurrer covers most of the points that have been raised upon the merits.

Upon careful examination of the evidence, we are of opinion that all the findings of fact made by the single justice must stand. In view of the relations between the parties and the existing circumstances, we doubt whether any contrary findings could have been supported.

There is nothing in the transactions relating to the Carney building to prevent giving to the plaintiff the relief for which he asks. That was an independent matter, which has been fully heard, and it has been found that the trustees are not liable to the *cestuis que trust* by reason thereof. *Warren* v. *Pazolt,* 203 Mass. 328. Certainly we cannot hold them indirectly for what it has been held does not impose upon them any liability. Nor

can we make the plaintiff suffer as a beneficiary for the errors of judgment in which he has shared as a trustee, but for which neither he nor the other trustees are to be held liable as trustees.

We do not deem it desirable to discuss further the considerations which have been suggested by the ingenuity of counsel. We have weighed carefully all the arguments that have been addressed to us in behalf of these defendants and have examined all the decisions to which they have referred us, although all of these have not been cited. We have found nothing to lead our minds to a different conclusion from that which we have reached, or that can prevail against the manifest equities in favor of the plaintiff. A decree must be entered for the plaintiff as prayed for, with costs against the intervening defendants.

*So ordered.*