William J. Sullivan, J.
This action was instituted by plaintiffs to recover a down payment of $3,450 made by them under a contract to purchase from the defendant corporation a parcel of property with a dwelling house thereon located at North Bellmore, in the Town of Hempstead, Nassau County, New York. Plaintiffs assert that the contract is void and that they are entitled to a return of their down payment because the defendant failed to obtain a variance from the zoning ordinance of the Town of Hempstead as provided in the contract. The provision in question, designated as paragraph 22 in the contract of sale, reads as follows: “The parties hereto do *937 hereby recognize that a variance from the Town of Hempstead will be necessary to use this as a mother-daughter. Upon approval of a mortgage, the seller will make application to the Board of Zoning Appeals for a variance to use the subject premises as a mother-daughter dwelling. In the event that this variance is not obtained and upon written notification of this to the purchasers, the purchasers shall have the right to cancel this contract by serving written notice upon the attorneys fox the seller, Mishkin and Strear, 53 North Park Avenue, Rockville Centre, New York, within fifteen (15) days after receipt of notification of the denial of the variance. Upon receipt of this notification and upon the refund of the monies paid hereunder, this contract shall be deemed cancelled, null and void.” (Italics added.) Subsequent to the making of the contract, defendant filed an application with the Board of Zoning Appeals of the Town of Hempstead, which by its terms, according to the evidence adduced on the trial, was merely an application to “Install second kitchen in proposed one family dwelling”. Neither the original application nor any copy thereof was offered in evidence on the trial. After a hearing held by the Board of Zoning Appeals on May 18, 1966, at which plaintiff Olgerts I. Balodis (the son of plaintiff Anna Balodis) appeared and testified, the board rendered a decision dated June 2, 1966 which described the application as one based on “Practical difficulties and unnecessary hardship” and granted it to the following extent: “The application for a second kitchen in a one family dwelling is therefore granted on condition that Olgerts I. and Rota Balodis and parents Alfred and Anna Balodis maintain ownership of the premises and occupy the premises. Should the ownership change or occupancy arrangement change, the second kitchen is to be removed.” (Italics added.) Within 15 days after receiving notice of this decision the plaintiffs through their attorney notified the defendant’s attorneys that they elected to cancel the contract “ on the grounds that the variance has not been granted ” and requested repayment of the amount sued for herein.
Plaintiffs contend that the decision of the board does not grant a ‘1 variance ’ ’ as required by paragraph 22 of the contract, but is merely a temporary permit for maintenance of a second kitchen only as long as the plaintiffs themselves continue to be the owners of the property.
The term “mother-daughter dwelling” is not defined in the contract of sale. The evidence of the plaintiffs is to the effect that there was no discussion whatever, either before or *938 at the time of the preparation and signing of the contract of sale, as to the definition or meaning of ‘ ‘ mother-daughter ’ ’ use or “mother-daughter dwelling ’\ Plaintiff Anna Balodis testified that it was her understanding at the time of signing the contract that a ‘ ‘ mother-daughter dwelling ’ ’ means a house occupied by two families having a parent and married child relationship, wherein the maintenance of separate kitchens and living quarters for each family unit is permitted; that such permission applies to the dwelling without regard to the identity of the particular owners as long as the occupants constitute such a ‘1 mother-daughter ’ ’ family relationship ; and that a sale of such a dwelling to other persons is not prohibited as long as the purchasers themselves constitute a similar parent-child relationship, so that- the premises still continue to be used as a £ 1 mother-daughter dwelling ”. Defendant, on the other hand, introduced evidence through the testimony of its president that prior to the preparation of the contract of sale he had a discussion with the plaintiff Olgerts I. Balodis as to the meaning of “mother-daughter” occupancy; that he told him that such use was limited to the purchasers’ own personal occupancy; that the premises could not be sold to any other persons as such; and that at the time of the preparation and signing of the contract of sale, both plaintiffs were informed that in the- event of a sale of the property by them, the second kitchen would have to be removed. His testimony was controverted by both plaintiffs. On this issue as to whether or not there was any definition or explanation to the plaintiffs, either prior to or at the time of the signing of the contract of sale, as to the meaning of the term £ £ mother-daughter dwelling ’ ’, the court accepts the evidence offered by the plaintiffs and finds that there was no discussion or definition of the term. Since it is not defined in the contract and its meaning is not apparent from the context in which it appears, this term must be construed by the court in accordance with the usual rules of construction in an effort to ascertain the intention of the parties. Paragraph 22 was inserted in the contract of sale only after extended negotiations between the parties and their respective attorneys at the office of defendant’s attorneys. Since the undertaking to apply for a “ variance” was assumed by the defendant only after discussion by all the parties and after the defendant had received the advice of its own attorneys, any ambiguity will be construed most strongly against the defendant as the one who undertook the obligation, pursuant to the following well-settled rule of construction: “in case of *939 ambiguity, a contract must be construed most strongly against the person undertaking or entering into the obligation. So where a contract may be construed in more senses than one, such construction should be adopted as will be more beneficial to the promisee”. (17A C. J. S., Contracts, § 324, p. 227.) The court deems it significant that the obligation assumed by the defendant under this clause of the contract was to apply for a ‘ ‘ variance ” so as to authorize the £ ‘ mother-daughter ” use demanded by plaintiffs as a condition of purchasing the property. As the term implies, a ‘ ‘ variance ’ ’ is an authorization to use property for a purpose prohibited by the zoning ordinance; and a use which is authorized by a “variance” is not personal or limited to a particular owner of the property but rather £ £ runs with the land ’ ’ (Anderson, Zoning Law and Practice in New York State, § 18.47). As stated in Matter of Feneck v. Murdock (16 Misc 2d 789, 792): “ A grant of a variance runs with the land and is not a personal license to the landowner ’ ’. This element whereby a variance “ runs with the land” is the essential factor which distinguishes it from a mere “permit” which is personal to the grantee. Defendant’s witness Cohn, an attorney with several years’ experience as a specialist in real estate and zoning matters, testified that the customary meaning of the term “ mother-daughter ” use is a “permit” or “ special exception ”, or a “conditional use permit” to install a second kitchen in a house occupied by the families of a parent 'and married child; that such permit is personal to the owner to whom it is granted; that it ceases on a sale of the property; and that if a new owner or prospective purchaser wishes to have such use continued, he must make a new application therefor. He further stated that the term “variance” as used in paragraph 22 was “ to some extent a misnomer ”; and that the term “variance” is “different necessarily” from a “ permit”. Even on defendant’s own evidence, therefore, .the wording of paragraph 22 is ambiguous. Obviously, the permission granted by the Board of Zoning Appeals by its decision on defendant’s application, being limited personally to the plaintiffs as owners, does not constitute a “ variance ”, which is what the contract called for. Accordingly, the plaintiffs properly availed themselves of their right to cancel the (contract.
In addition to the foregoing, plaintiffs are also entitled to ■prevail herein because there was no “meeting of the minds ” .as to an essential element of their transaction. The court ;finds that at the time of the signing of the contract, the parties *940 had basically divergent ideas and intentions as to the meaning of the term ‘ ‘ mother-daughter dwelling ’ ’; that the plaintiffs were willing to purchase the property only if a variance was obtained which would enable them to occupy the premises as a “ mother-daughter dwelling ’ ’; that such variance, according to their understanding and intention would carry with it the right to sell the property as a “mother-daughter dwelling” to any purchaser who had the same appropriate family relationship for such occupancy; but that, quite to the contrary, the defendant understood and intended that such “mother-daughter” occupancy would be limited to the plaintiffs personally as owners, and would not survive a sale by them. The court further finds that the plaintiffs would not have entered into the contract if the meaning of the term were that claimed by the defendant. Since, therefore, the understanding and intention of the parties as to this basic factor of their negotiations were irreconcilably in conflict, there was actually no meeting of the minds on this point, and therefore no valid contract ever came into being. As stated in Corpus Juris Secundum (vol. 17, Contracts, § 31, p. 635): “In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same thing in the same sense ”. See, also, Holberg v. Westchester Racing Assn., (184 Misc. 581, 585), wherein it was held:
“In an agreement of sale the essentials are the same as in other contracts. If the seller understands he is selling.one thing and the buyer that he is buying another thing, there can be no contract of sale. (2 Williston on Sales [2d ed.], §§ 5, 653, 654; Raffles v. Wichelhaus, 2 Hurl. & Colt. 906; Hecht v. Batcheller, 147 Mass. 335.)
“In Hecht v. Batcheller (supra, p. 338) it was stated: ‘ It is a general rule, that, when parties assume to contract, and there is a mistake as to the existence or identity of the subject matter, there is no contract, because of the want of the mutual assent necessary to create one ’ ”.
In its consideration of this case the court has not overlooked the fact that plaintiff Olgerts I. Balodis stated at the Board of Appeals hearing that he would remove the second kitchen if his parents should move out of the house; and that during the hearing the defendant’s counsel, with said plaintiff present, stated: “In the event the house would be sold, this second kitchen will be removed and must be removed ”. It is not necessary to discuss the circumstances under which these state *941 ments were made. It is sufficient to note that, whatever their significance might be, such statements could not be binding upon plaintiff Anna Balodis who was not present; nor could they, being oral, constitute a valid modification of the written contract of sale (General Obligations Law, § 5-1103; formerly in Real Property Law, § 279, subd. 1; Fisch, New York Evidence, § 45).
Accordingly, the court finds that plaintiffs are entitled to recover their down payment of $3,450 with interest thereon from June 15, 1966. This constitutes the decision of the court under CPLR 4213.