## Case No. 15,826.

### UNITED STATES v. MOTT et al.

[1 Paine, 188.] [1]

Circuit Court, S. D. New York. April Term, 1822.

INSOLVENCY—GOVERNMENT PRIORITY—EXECUTION CREDITOR—PARTIES.

1. Under the 5th section of the act of the 3d of March, 1797 [1 Stat. 515], an assignment, to entitle the United States to their priority, must be an assignment of all the debtor's property; but it need not be for the benefit of all his creditors.

2. An assignment made by a debtor of the United States, when his property was about being levied upon, under judgments obtained against him by one of his creditors, in trust, first for the debt of such creditor, and then for the debt of the United States, was held to be a voluntary assignment, and fraudulent and void against the United States, notwithstanding the creditor gave up his intention of levying, in consideration of such assignment, and that the property might be sold under it to the best advantage, for the benefit of the sureties to the United States.

3. And on a bill filed by the United States, to obtain their priority in such a case, against the creditor and sureties, who were joint assignees of the debtor's estate, the court refused to suspend its decree in favour of the United States, against the assigned property, until they should have proceeded to execution on their judgment against the sureties, or to make any decree in favour of the creditor against the sureties, notwithstanding the assignment had been received by the creditor for their benefit, and at their request, and they, by becoming parties to it, had covenanted for the execution of its trusts.

4. Whether such relief would have been afforded the creditor if the sureties had been properly before the court for that purpose? Quære.

This was a bill in equity, filed on behalf of the United States, under their priority acts, praying that certain property assigned by their debtor against whom they had obtained judgment, to two of the other defendants, might be subjected to the execution of the complainants, or that the assignees might pay over to them the proceeds of such property.

The bill stated, that on the 1st of January and 10th of April, 1815, and the 12th of January, 1816, Noel Blanche, to secure duties on distilled spirits, executed to the United States, his three several bonds for the penal sums of 15,000 dollars, 4503 dollars and sixty cents, and 4194 dollars and seventy two cents, with William Coulter and the defendant Jeremiah Vanderbilt, as his sureties, on which bonds judgments were recovered in

---

[1] [Reported by Elijah Paine, Jr., Esq.]

1819, at the May term of the district court of the Southern district of New-York, on which execution had been issued, and Blanche and Vanderbilt been taken. That these judgments were still unsatisfied. That Coulter died before the recovery of said judgments, leaving the defendants, Casparus Prior and Josiah Hornblower, his executors. The bill further stated, that Blanche, being insolvent, within the meaning of the act of congress entitled "An act to provide more effectually for the settlement of accounts between the United States and the receivers of public monies," passed March 3d, 1797, and the act entitled "An act to regulte the collection of duties on imports and tonnage," passed the 2d of March, 1799 [1 Stat. 627], made an assignment of all his property to the defendants, Vanderbilt, Coulter, and John Mott, but that the United States are, notwithstanding, entitled to a priority of payment under the said acts. That the defendants, John Mott and his copartner Richard S. Williams, and the defendants, Vanderbilt and Coulter, or some of them, had received sufficient property, under the said assignment, to satisfy the judgments of the United States, but refused so to apply it. That they had, on the contrary, applied it to the payment of debts due from Blanche to the said Mott and Williams. The bill also stated, that they had sold a part of the property to the defendants, Uriah R. Scribner and John Hitchcock, and prayed that they might be enjoined from paying, &c. It was also stated, that Blanche and Vanderbilt had presented their petitions to the president and secretary of state, and that their bodies had been discharged from execution. All the facts stated in the bill were either admitted or proved.

Mott and Williams in their answers stated, that Blanche being indebted to them in the sum of 5,424 dollars, on the 3d of April, 1816, confessed judgments for that amount in New-York and New-Jersey, which judgments were still unsatisfied. They also stated that the assignment from Blanche, mentioned in the bill, was made in order to prevent their taking out execution upon the said judgments, against the property of Blanche, and thus forcing a sale of it at a great sacrifice; and that had they not expected to be made perfectly secure by the assignment, they should have proceeded, as they were prepared to do, to levy upon his property. They stated that this was the understanding of all the parties to the assignment, and the motive for making it. That it was expected at the time of its execution, that the property assigned would more than pay their debt, which was preferred, and would pay a portion of the debt due the United States, which was next provided for; but that it was understood and agreed, that whatever might remain due to the United States, should be paid by Coulter and Vanderbilt, the sureties. And they insisted, that as this

was the understanding of the sureties when they became parties to the assignment, the United States ought, in the first place, to exhaust their remedies against them, before they resorted to the assigned funds in the hands of Mott and Williams, who had been induced to relinquish their executions at the request and for the benefit of the sureties. They further stated, that Coulter's estate in the hands of his executors, the defendants, Prior and Hornblower, was more than sufficient to pay the United States; and that the United States had obtained judgment against them, but that execution had been stayed at the request of the executors, and without their consent. That the bill of the United States in this suit had been filed at the request and for the benefit of the sureties. Annexed to their answer was an account of the proceeds of the property received by them under the assignment, with their disbursements, by which it appeared that they had not received enough to pay their own debt.

The assignment made by Blanche, after stating his indebtedness to Mott and Williams, and that Vanderbilt and Coulter had become his sureties to the United States, and that he was unable to satisfy these engagements, proceeded, in consideration of the premises, to assign to Mott, Coulter, and Vanderbilt, who also executed it, certain real estate and all the personal estate of the assignor in trust, first, to pay the debt of Mott and Williams; secondly, the debt due to the United States, so that the sureties should be completely indemnified and saved harmless; and lastly, the residue to be applied to pay certain other debts. There was a covenant, on the part of the assignees, faithfully to perform, and execute these trusts, according to their true intent and meaning.

It appeared by the testimony of the defendant, Vanderbilt, who was examined as a witness, that at the time the assignment was executed, it was understood by the parties to it, that Mott and Williams were about levying on Blanche's property, and that the assignment was agreed upon as a substitute for that course, in order that Mott and Williams might be first paid, and as much be made out of the property as possible for the benefit of the sureties. Mott and Williams were satisfied with their judgments, and considered themselves perfectly secure, and the assignment was proposed by Vanderbilt himself, to prevent a sacrifice of the property, and agreed to by Mott and Williams, entirely for the benefit of the sureties. It was believed at the time that there would be enough to pay the debt of the United States as well as the debt of Mott and Williams.

The record of the judgments of the United States against Coulter's executors were produced in evidence, by which it appeared that the judgments were obtained by de-

fault. Two hundred and thirty dollars of the assigned property had been received by Coulter, and Scribner and Hitchcock were indebted for a part which they had purchased of the assignees. The residue was received by Mott and Williams.

A cross bill had been filed in the cause by Mott and Williams, for the purpose of bringing Coulter's executors directly before the court, but it was never brought to a hearing, in consequence of the suit's being compromised on the coming in of the master's report at the next term.

R. Tillotson, U. S. Dist. Atty.

J. O. Hoffman and H. Wheaton, for defendants, Mott and Williams, insisted—

(1) That the assignment here was not a voluntary assignment within the meaning of the act of 1797. It was made by Blanche under such circumstances as showed that it was not an act of consent on his part, but of absolute necessity.

(2) That the nature of the transaction rebutted every presumption of fraud. The only motive of the parties was a desire to benefit the United States and the sureties on the bond, instead of defrauding them. It was also an assignment for a new and valuable consideration.

(3) The priority of the United States does not attach until the insolvency of the debtor is testified by some overt act. [U. S. v. Fisher] 2 Cranch [6 U. S.] 381. In this case the first act which would be so considered, was the execution of the assignment, and the equity of Mott and Williams was older than the assignment.

(4) Coulter, by becoming a party to the assignment, was estopped from denying its validity. Yet this suit is manifestly by the procurement of his executors, to reverse the order of the trusts in their favour.

(5) The court are bound to look at the relative equities of the defendants. The United States can resort to the property of Coulter as well as the assigned property. But Mott and Williams, although as against Coulter they are entitled to hold the assigned property, yet if deprived of this, they are without any remedy against his estate. It is precisely analogous to the case of two funds, where a court of equity will compel a party who can resort to either, to proceed so as not to injure another party who can resort to one only. 1 Vern. 445; 10 Mod. 488; Amb. 614; 8 Ves. 388, 391; 9 Ves. 209. And this rule applies as well to the crown as to individuals. 8 Ves. 388. That the estate of Coulter was amply sufficient to pay the debt due to the United States, is admitted by their suffering judgment to pass against them by default. If they had not sufficient assets, they should have pleaded the fact.

For these reasons it was insisted, that the court ought not to make a decree against Mott and Williams, until the United States should have taken out execution and levied on the estate of Coulter; or that they should make a decree in favour of the United States, directly against the executors of Coulter; or that, in the event of a decree's being made against Mott and Williams, one should also be made in their favour against the estate of Coulter.

D. B. Ogden, G. Griffen, and B. Haight, for defendants, Prior and Hornblower, replied,—

That the doctrine of election between two funds did not apply: it might, had both funds belonged to Blanche. If it did apply, however, as against a surety the court would not turn the United States round. It does not appear that there is any other fund than the assigned property. Non constat that Coulter's executors have any of their testator's property. At any rate, there is no evidence that the fund is adequate. Besides, Coulter's executors are not before the court so that a decree of the kind asked for, can be made against them. They are brought here to answer only for the property assigned by Blanche. It is admitted, that Mott and Williams have no remedy at law against Coulter's estate, and a court of equity will not charge a surety any further than he is chargeable at law. If Coulter were answerable here for the effect of his covenant in the assignment, that covenant is only to execute the trusts and not to indemnify Mott and Williams. Besides, it is evident Coulter became a party to the assignment, under a mistake as to the facts. He, as well as the rest, supposed that the property would be sufficient to pay all Blanche's debts—or the other parties deluded him into the assignment by such a representation. If the doctrine of election between two funds were not inapplicable here, a case cannot be produced where the property of the principal debtor has been left, and that of a surety resorted to. But the assignment is illegal and void; and if for one purpose, it is for all, and no body can claim under it. It is a fraud upon the United States. It also creates a preference, which equity discountenances. Equality among creditors is equity. Prec. Ch. 538. Equity will not decree the performance of an unjust agreement. 2 Brown, Parl. Cas. 296. Nor will it indirectly lend its aid to an agreement of which it will not decree a specific performance. If Coulter was bound by the assignment to indemnify Mott and Williams, they can sue his executors for whatever they may be obliged to pay the United States.

LIVINGSTON, Circuit Justice. Whether the United States are entitled to the priority, which it is the object of their bill to establish, and which is the first question arising out of the pleadings, is one of no difficulty, considering the decisions which have already been made on the fifth section of the act, to provide more effectually, for the settlement of accounts between the United States and re-

ceivers of public money, passed the 3d March, 1797. The words of this section, as far as they bear on the present case, are, that "where any revenue officer, or other person, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, the debt due the United States shall be first satisfied; and the priority hereby established shall be deemed to extend, as well to cases in which a debtor, not having sufficient property to pay all his debts, shall make a voluntary assignment thereof, as to cases in which an act of legal bankruptcy shall be committed." The debt of Blanche to the United States being admitted, as also the execution by him of the deed, bearing date the 20th of May, 1816, it remains only to examine the character of this instrument, and the situation of the grantor at the time of its execution. If he had not then sufficient property to pay all his debts, and if it were a voluntary assignment of his property—which has been decided to mean all the debtor's property—the right of preference in the United States must necessarily follow. It was argued by all parties as if it were necessary, that the assignment should appear to be for the benefit of all the creditors of the insolvent. This would be necessary if these bonds were for the payment of duties, in which case the assignment must not only be voluntary, but for the benefit of creditors, which words are not found in the act which governs the present case—But if the counsel are right and the court be mistaken in this respect, and the assignment, to give rise to the priority here claimed, ought to be for the benefit of creditors or of all the creditors, there well be no difficulty in fixing on it this characteristic also. That the assignment, although for a valuable consideration, was voluntary within the meaning of the act of congress, that is, made freely and without any legal compulsion, is not denied. There is some controversy whether it included all the property of the debtor, without which, under the decision in the case of the United States against Hoe and others, a priority would not attach, unless indeed it should appear, that for the purpose of evading the provisions of the law, a trifling part of the estate had been omitted. If the court had nothing for its guide but the assignment itself, it would not be a very forced construction of the instrument, taken altogether to regard it as a conveyance of all the debtor's property. It is professedly so of all his personal estate, without any exception, and it also comprises, as appears by the recitals, all his real estate in New-Jersey and New-York. This taken in connexion with the object of the assignment, would leave but little room to suppose that there might be lands elsewhere than in the states of New-York and New-Jersey, which were not included in this deed.

But whatever doubt might otherwise rest on this part of the case, it is dispelled by the following testimony produced by the United States, who have very properly taken on themselves the burthen of proving the fact; the deed not being as explicit as it might have been. Besides other witnesses who were well acquainted with the situation of Blanche, and who establish the fact, in a manner which ought to be satisfactory, the debtor himself has been examined as a witness,—and settles beyond controversy, that the deed did cover the whole of his property.

It is objected that Blanche is interested: but whatever feeling he may have, it must in point of interest be unimportant to him whether the United States succeed in this suit, and if they do, whether they are paid out of the estate assigned to Mott, Vanderbilt. and Coulter, or out of the private property of the latter. If the United States fail in this action, he continues their debtor—if they be paid out of the assigned property, his debt to Mott and Williams will be revived pro tanto; and if the plaintiffs are paid out of the assets in the hands of Coulter's executors, he will become a debtor to the amount of such payment to his estate. It is equally clear, if that be necessary to be proved, from the testimony of Blanche, and the terms of the assignment, that when he made it. he had not sufficient property to pay all his debts.

All the allegations of the complainants being thus admitted or proved, which were necessary to bring their case within the meaning of the act of the 3d of March, 1797—nothing would remain but for the court to make a decree pursuant to the prayer of their bill. But it is supposed by the counsel of the administrator of John Mott, and of his surviving partner Williams, that, instead of making them account immediately for the trust property of Blanche, a decree should be made in favour of the United States, in the first instance against the estate of Coulter, and leave the executors of his will to their remedy for reimbursement, if they have any, against Mott and Williams; or that if a decree be made against Mott and Williams in favour of the complainants, one should at the same time pass in their favour and for their indemnity against the estate of Coulter. It has been argued that the United States should have their remedy in the first place against the estate of Coulter, because he is a party to the deed of assignment, and thereby consented to postpone the debt for which he was surety, to that of Mott and Williams. It is also said in favour of such a decree, that there being two funds, out of which the United States can be paid, and but one from which Mott and Williams can have satisfaction, they have a right to compel the complainants to resort in the first instance to, and exhaust the one on which they can have no claim.

A defendant who asks of a court of chancery not to touch the only fund to which he can resort, while there is another one out of which the complainant can obtain satisfaction. ought to show not only that he has a clear and indisputable title, which will be respected in equity, to the fund which he de-

sires may be held sacred for his use, but that there are in reality two funds, of which an election can be made; and that by such election no injustice will be done to any of the other parties before the court. Thus where one person has two mortgages on different estates, and another has a mortgage only on one of them, nothing is more reasonable than to force him who holds the two mortgages to proceed first against that estate on which the other has no security—and to leave the other untouched in case the first estate be sufficient to satisfy him. There were not only two funds, but they were both before the court, and the title of neither party was liable to any doubt, nor could the mortgagor have any objection to such a decree. It would, therefore, have been most manifestly unjust to have acted otherwise.

The first answer then, to this course of proceeding on the present occasion is, that the two funds here spoken of, that is, the property mentioned in the deed of assignment or its proceeds, and the estate of Coulter, admitting it sufficient to pay the debt, are not both before the court, so as to justify any decree against the latter. Although it may be collected from the proceedings that Coulter was a co-debtor with Blanche to the United States, and that he may have property enough to pay the debt, nothing would be more unjust or improper than to make a decree against his estate, under the present bill, which, notwithstanding its general prayer, most manifestly confines any relief that may be afforded, to such as the United States may be entitled to out of the estate of Blanche, in consequence of the execution of the assignment by him before-mentioned. Coulter's representatives, therefore, have not been called upon. nor have they had an opportunity of contesting the right of the complainants to a decree against his estate. Nor have they been put on their guard by any intimation or allegation in the bill to dispute the grounds on which two of their co-defendants have placed the propriety of such a decree. If the United States had sought by their bill a decree against the estate of Coulter, on any other ground than as one of the trustees in the deed of assignment, a demurrer might have been interposed, their remedy on the judgment confessed by the executors, being clearly a remedy at law, unless for the purpose of discovery, they had thought proper to bring the executors into a court of chancery. It is not enough to put the executors of his will on their defence, that the suggestion has been made in a separate answer of one or more of the defendants.

Thus far the court has proceeded on the supposition, that there are two funds before it, out of which satisfaction may be had. But non constat that Coulter has left any estate at all;—nor, if he has, that any of it remains in the hands of the executors of his will; nor, that they are able, if they have inadvertently admitted assets by their plea in New Jersey, to pay so large a sum, or any part of it. It is believed that a court of chancery has in no case prevented a party, who had a clear and undoubted right, from proceeding against a particular fund to which another might also claim a title, although a subordinate one, without presenting to it another equally certain, if not as productive. In the present case, therefore, it would be unjust to delay the United States by a decree which might prove illusory, against an estate which might not produce a cent; when they ask for and have a right to receive payment out of a fund to which as far as it extends, the law has given them a title.

But if the reasoning of the court thus far be incorrect, there are other obstacles in the way of such a decree as is sought for by Mott and Williams. If Coulter has agreed, by being a co-trustee with Mott and Vanderbilt in the deed of assignment, that this property should first be applied to the payment of the debt of Mott and Williams; if this distribution be deranged by operation of law, and the decree of a court—it does not follow that he would be bound to find other property to satisfy Mott and Williams, or to indemnify them for what they might thus lose. Still less evident is it that the United States, or this court, are under an obligation to pursue any course, which should have for its object the securing to Mott and Williams indirectly the very benefit under this assignment which the law has taken from them—and the more especially as the instrument on its very face, avows the intention of creating a preference in their favour to the prejudice of the government, and against the policy and provision of all the laws which have been passed on this subject. Would not such a course of decision encourage rather than discountenance similar attempts? But there is another objection to such a decree, which if not conclusive of itself, is entirely satisfactory to my mind. It is admitted by all, that the debt due by Coulter is only as the surety of Blanche. Would not then a decree, operating in the first instance on the estate of the surety, if any such there were, and abstaining from the fund of the principal debtor, until the former were exhausted, be pregnant with injustice, and at variance with the whole course of chancery proceeding?

It is no answer to this difficulty to say, that the surety by his own act has justified this mode of proceeding. Such assent, may have been given on a belief that the property assigned would pay both debts, not meaning, however, to guaranty the payment of Mott and Williams, if the United States should think fit, notwithstanding this arrangement, to assert their priority. At any rate, before such conclusion be drawn, if it ever can be, the executors of Coulter's will should have an opportunity of controverting in a suit

with Mott and Williams, matters which they have not been called upon in this suit to take any notice of; and which, for any thing that yet appears, may defeat their right to any relief against him. But as it is intended to leave these parties to litigate either here or elsewhere, as they may be advised, it is not intended to express an opinion on any claim that Mott and Williams may set up against the estate of Coulter, to make good their loss by this suit, or on any defence which his executors may interpose to such claim. I only mean to say, that in the present suit, they are entitled to no relief against the estate of Coulter; and this being my view of the subject, I shall make the following decree.

This cause came on to be heard on the bill, answers, replication, and depositions, and was argued by the district attorney for the United States, by Hoffman and Wheaton for the defendants Mott and Williams, and by David B. Ogden, Griffen, and Haight for the defendants Casparus Prior and Josiah Hornblower, executors of the last will and testament of William Coulter, deceased. Whereupon this court doth order, adjudge, and decree, that the monies brought into court by the defendants, Uriah R. Scribner and John Hitchcock, be paid to the complainants, in part satisfaction of their demand against the defendant, Noel Blanche. And it is further ordered, adjudged, and decreed, that it be referred to William Ironside to ascertain and report what sum will remain due to the complainants, on the several bonds mentioned in their bill, as being executed by the defendant, Noel Blanche, by the said William Coulter, and by Jeremiah Vanderbilt, after crediting thereon, the sum which has been brought into court as aforesaid, and which is, by this decretal order, directed to be paid to the complainants. And it is further ordered, adjudged, and decreed, that the said William Ironside do also ascertain and report what property was conveyed by the deed of assignment in the pleadings mentioned, bearing date the 20th day of May, in the year of our Lord 1816, that is to say:—All the particulars, whether real or personal, of which the same consisted, and what part or parts thereof have been sold by the trustees therein named, and by either of them, and to whom, and for what prices, and what sums of money have been received by the said trustees, or by either of them, under and in virtue of the said deed of assignment, and how the same have been applied, and what part of the estate, real or personal, granted by the said deed, remains unsold, or in the hands of the said trustees, or either of them, and what is the value thereof. And also. that the said William Ironside report, whether there were any and what encumbrances, and of what kind and nature, and to what extent, on any part of the real estate mentioned in the said deed of assignment; and whether any and what part of such estate has been sold in virtue thereof. And it is further ordered, that in taking the said account, the said William Ironside may examine on oath, the district attorney for the Southern district of New-York, or any of either of the defendants, as well as any other person or persons. And any further direction or decree is reserved until the coming in of the said report.