## Case No. 15,727.

### UNITED STATES v. MARSHAL OF THE DISTRICT OF NORTH CAROLINA.

[2 Brock. 488.] [1]

Circuit Court, D. North Carolina. Fall Term, 1833.

INSOLVENCY—GOVERNMENT PRIORITY—TRUST DEED—SUBSEQUENTLY ACQUIRED PROPERTY.

1. A deed executed by a debtor of the United States, conveying all the property in the

[1] [Reported by John W. Brockenbrough, Esq.]

possession of the debtor to trustees, for the payment of his debts, not including the debt to the United States, is an act of insolvency, both within the spirit and letter of the act of congress, giving priority, in such cases, to debts due to the United States over all others, and the priority attaches at the instant that the deed is executed.

2. If, subsequent to the execution of the deed, the debtor recovers property in right of his wife, in a regular course of legal proceeding, it seems, that the subsequent recovery cannot defeat the priority of the United States, which was created by the deed, however large the amount of the property recovered, compared with that conveyed by the deed.

3. But if the relative value of the after-acquired property be inconsiderable, it is clear, that it cannot affect the pre-existing priority of the United States. Where "a trivial portion of the estate of the debtor," in his possession when the deed is made, is not conveyed by the deed, this is still an act of insolvency within the act, and the reservation of such "trivial portion," will not prevent the consequent priority of the United States from attaching: a fortiori, where such "trivial portion" is reduced into the possession of the debtor, after the execution of the deed. And the priority of the United States extends to this after-acquired property.

4. Whether the property of a debtor of the United States, which is omitted in a deed, which otherwise would create a legal insolvency, be so inconsiderable as to evidence an intent to evade the act, is a question which must be referred in every case in which it arises, to the sound discretion of the court.

[Appeal from the district court of the United States for the district of Albemarle, North Carolina.]

MARSHALL, Circuit Justice. This is an appeal from a decree of the district court, for the district of Albemarle, on a motion to direct the marshal to pay to the United States the sum of $378.75, levied under an execution, sued out by the United States, against James Iredell Tredwell, and others. [Case unreported.]

The case was as follows: The United States obtained a judgment against Tredwell, in October, 1829, on a bond executed in February, 1828. An execution was issued and delivered to William D. Roscoe, deputy marshal, on the 24th of October, 1829, who, on the same day, levied it on a negro woman and three children. The State Bank of North Carolina obtained a judgment against Tredwell, in September, 1828, and issued executions thereon from term to term, the last of which was delivered to the said William D. Roscoe, who was also sheriff of the county, and who, as sheriff, levied the said execution on the said slaves, on the same day on which he had, as deputy marshal, levied the execution of the United States. On the 4th of November following, the slaves were sold under both executions, and the money brought into court. On the 7th day of June, 1828, the said James Iredell Tredwell, conveyed certain enumerated lands, slaves, and other personal property, in trust, for the payment of debts, specified in the deed, among which the debt due

to the United States was not included. The deed does not profess, in terms, to convey, but does in fact convey all the property in possession of the said Tredwell. The negro woman and her children are not comprehended in it, nor were they at the time in Tredwell's possession. They were recovered in October. 1829, by the judgment of the court, in a suit brought by Tredwell and wife, and were delivered on the 23d day of the same month, never having been previously in possession of himself or wife, but having remained until the rendition of the judgment, in the adverse possession of another, who claimed them as his own property. The district court overruled the motion, and directed the marshal to pay the money in his hands, both as marshal and sheriff, to the State Bank of North Carolina. The United States have appealed from this judgment.

The bond from Tredwell to the United States having been executed previous to the deed, by which he conveyed all the property then in his possession to trustees for the payment of other debts, the question arises, whether the omission of these slaves, his right to whom was then litigating in court, withdraws this deed from the operation of the act of congress, passed on the 3d of March, 1797 [1 Stat. 512], entitled, "An act to provide more effectually for the settlement of accounts between the United States and receivers of public money." The fifth section of that act declares, "that where any revenue officer or other person, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent," "the debt due to the United States shall be first satisfied; and the priority hereby established shall be deemed to extend as well to cases, in which a debtor, not having sufficient property to pay all his debts, shall make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor, shall be attached by process of law, as to cases in which an act of legal bankruptcy shall be committed." 1 Story's Laws, pp. 464, 465, c. 74. The deed of the 7th of June, 1828, was "a voluntary assignment" of the property conveyed, and would be the very act contemplated by the fifth section of the act of 1797, as the foundation of the priority claimed by the United States, had the deed comprehended the four slaves afterwards recovered by Tredwell, in right of his wife. These slaves not having been reduced to possession, and even the right of the wife not having been established. could scarcely have been considered, at the date of the deed. as a part of his estate. The priority of the United States, if it exists, attached at the instant the deed was executed, and could not be defeated by the subsequent decision of the suit brought for these slaves. If the deed did not create this priority, then the property it conveyed passed immediate-

ly to the trustee for the benefit of the creditor, and no subsequent decision of the suit could retroact upon it, and subject it to the debt due to the United States. I am inclined to think, that as the deed conveyed all the property to which Tredwell was at the time entitled, that the unascertained claim of his wife, to the slaves afterwards recovered, cannot be considered as defeating the priority given by law to the United States, in all cases where their debtor shall make a voluntary assignment of his property. If I am mistaken in this, if the four slaves had been at the time, the acknowledged property, in the actual possession of Tredwell, I should feel much difficulty in saying, that withholding them from the deed would defeat the priority of the United States.

In U. S. v. Hooe, 3 Cranch [7 U. S.] 73, it was said, that a debtor of the United States did not, by a bona fide conveyance of part of his property for the security of a creditor, commit an act of insolvency, in the sense of the law. The words of the act could be satisfied only by an assignment of all his property. But the court added: "If a trivial portion of an estate should be left out, for the purpose of evading the act, it would be considered as a fraud upon the law, and the parties would not be enabled to avail themselves of such a contrivance. But where a bona fide conveyance of part is made, not to avoid the law, but to secure a fair creditor, the case is not within the letter or the intention of the act." Page 91. This opinion was delivered in a case, in which the debtor was in possession of a considerable estate, not half of which was conveyed by the deed in controversy. The court did not think this a case of insolvency, contemplated by the law. The conveyance was not equivalent to an act of insolvency, in its technical sense. But in Tredwell's Case, a very large property is conveyed by the deed, and only a woman with three children, worth between three and four hundred dollars, are reserved. This, in the words used by the court, in the case cited from Cranch, is but "a trivial portion of the estate," and had they been then in his possession, might have been supposed "to have been left out for the purpose of evading the act." Some difficulty would undoubtedly be often found in saying, whether property left out of a deed should be considered of such trivial amount as to evidence an intent to evade the act. But these difficulties are unavoidable, and when they occur. a court must exercise a sound discretion in deciding on them. In this case, the conveyance of the 7th of June, 1828, ought, I think. to be considered as an act of insolvency, within the true intent and meaning of the law, on which the priority of the United States attached. I at first doubted, whether this priority reached these slaves, the right of Tredwell to whom was not then fixed. On consideration, I am of opinion, that it does reach them. Had Tredwell

died after the judgment, so that they would have come to his executors as part of his estate, they would have been, by the express words of the act, subject to this priority. I cannot distinguish between the operation of the law on this property, in his own possession, and in that of his executor.

The decree of the district court is to be reversed, and the money in court paid to the United States.