WILLIAM H. HURLEY, individually and as administrator,[1] *vs.* MARION E. HOBBS & another.[2]

Suffolk. October 7, 1971. — December 15, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Equity Jurisdiction,* Reformation. *Deed,* Reformation.

In a suit in equity wherein a grantor's sole heir sought to have deeds by the grantor conveying a joint interest with himself in real estate to the defendant declared null and void, the evidence showed that the judge was not plainly wrong in finding that there was no undue influence or fraud exercised by the grantee, that the grantor was mentally competent to convey property, that there was adequate consideration as the grantee had performed many services for the grantor with the expectation of compensation and had not been

---

[1] The late William F. Hurley died after the arguments. Upon the filing of a suggestion of death, the administrator of his estate, the sole heir, was substituted as petitioner for Mr. Casper T. Dorfman, formerly conservator of Hurley's property.

[2] Grace K. Ogle, a widow, named as a "straw" transferee in one of two deeds dated January 28, 1966, hereinafter mentioned, and as grantor in the second.

fully compensated, and that the deeds were delivered to the grantee and accepted by her. |620-622|

Although, when a grantor conveyed a joint interest with himself in real estate to the grantee, the grantor's intent to bring it about that if he died the property "would go to" the grantee and if the grantee died "it would go to" the grantor was not effectuated in that either the grantor or the grantee could have terminated the joint tenancy by transfer or conveyance of a joint interest, the grantor's death prior to any such transfer by either joint tenant destroyed the possibility of such a termination, so that after his death the conveyance carried out his intent precisely and there was no need for reformation thereof. |622|

PETITION IN EQUITY filed in the Probate Court for the county of Suffolk on December 15, 1969.

The case was heard by *Wilson, J.*

*Samuel Leader* for the petitioner.

*Charles J. Wilkins* for the respondent Hobbs.

CUTTER, J.   This petition in equity in the Probate Court seeks, among other things, to have two deeds (which purported to give Mrs. Marion E. Hobbs an interest in certain Revere real estate; see fn. 2) declared "to be null and void," to have William F. Hurley (of whose estate Mr. Dorfman was conservator) declared to be the owner of that real estate at 609 Boulevard, Revere, covered by the two deeds, and to obtain its reconveyance to Hurley.   After extended hearings, a probate judge made a report of material facts.   A decree was entered with respect to the two deeds (1) that there was no undue influence or fraud by Mrs. Hobbs; (2) that Hurley "was mentally competent to convey property on January 28, 1966"; (3) that there was adequate consideration; and (4) that there was delivery of the deeds to and acceptance of them by Mrs. Hobbs.   It was also determined by par. 5 of the decree that on "January 28, 1966, there was a substantial amount due from the ward [Hurley] to . . . [Mrs.] Hobbs for unpaid personal services, but the expressed intent of . . . Hurley was not effectuated by the instruments prepared by his attorney and therefore the deeds . . . are declared to be null and void and . . . [Mrs. Hobbs and Mrs. Ogle] are ordered . . . to execute and deliver all necessary documents to

transfer title back to . . . [Hurley] as sole owner."

The conservator and Mrs. Hobbs appealed. The evidence is reported. The facts are stated on the basis of the report of material facts, filed October 30, 1970.

Mrs. Hobbs met Hurley some years ago. The evidence indicates that she first was employed by him in 1950. She worked as cashier of his Revere Beach amusement business, starting at $75 weekly, and then receiving $100 a week until 1969. Hurley's wife had died about 1948. He "needed someone to take care of his housework and prepare meals, and on the assurance she would be suitably compensated . . . [Mrs.] Hobbs assumed those duties from 1952 until the present time. . . . [O]ver a period of some . . . [seventeen] years there has been a very close relationship between . . . Hurley and" Mrs. Hobbs. He has made valuable gifts to her. In 1962, at the time of a trip by her to California, they discussed a settlement for "her unpaid services . . . since 1952." He offered her a half interest in his amusement business "but she wanted a money settlement . . . which would leave her free to leave Revere." When she talked of returning to California permanently, "Hurley entreated her not to leave him stating: 'Don't go. You are my right arm. I can't carry on without you.'"

In 1966, Mrs. Hobbs again talked of going to California. Hurley proposed giving her half ownership in the house. Mrs. Hobbs said she did not want the house. "Hurley insisted he wanted her to have the house provided she continued to stay there with him taking care of him . . . because he knew his son and daughter-in-law, if anything really happened, would only put him away, and he never wanted to be put in a home." Mrs. Hobbs "urgently desired a long delayed . . . money settlement . . . which would leave her free to leave Revere." After finding that "there was no fraud on her part nor undue influence," the judge also found "that Hurley on January 28, 1966, was fully competent to recognize and did recognize his financial obligation to . . . [Mrs. Hobbs] but was . . . [determined] that any settlement would be . . . such . . . as

would assure her remaining locally available for his care and companionship. Accordingly, in January, 1966, Hurley himself called his attorney . . . to arrange a real estate conveyance. . . . Hurley instructed the attorney he wanted the property deeded so that if he himself died it would go to . . . [Mrs. Hobbs] and if she died it would revert to him."

At the time "Hurley's mind was clear, he was alert, and . . . conversed with his attorney for a half hour." Conveyances were made on January 28, 1966, from Hurley to Mrs. Ogle as a straw and from Mrs. Ogle to Hurley and Mrs. Hobbs "as joint tenants and not as tenants in common." The expressed intent of Hurley and his directions were not carried out in the deed as drawn (see, *infra*, part 3, fn. 3, of this opinion).

Mrs. Hobbs first saw the deed after it was received by Hurley following recording by the attorney. Hurley handed her the deed. "[T]hey discussed it, and she . . . handed it back to him to be placed in his vault for safe keeping."

The judge apparently accepted the testimony of Dr. John F. Collins that on occasions when he saw Hurley professionally from 1962 to October, 1966, there was nothing in Hurley's appearance, speech, manner, or apparent comprehension to indicate any mental abnormality. On July 5, 1967, the day after Hurley had had an automobile accident, Dr. Collins found Hurley "mentally confused." The judge also referred to an examination of Hurley in November, 1968, by a neurologist who found impairment of Hurley's "thought processes and various mental functions" but that "it was impossible [then] to tell . . . [Hurley's] condition . . . back in January 1966."

On April 16, 1969, Hurley's son applied for appointment of a conservator for Hurley. The son was appointed temporary conservator on April 17, 1969, and Mr. Dorfman was appointed permanent conservator on October 29, 1969.

1. The evidence was in many respects conflicting. We cannot say that the judge's subsidiary findings, based upon it, were plainly wrong, although other findings might have

been permissible. His conclusions, apart from par. 5, embodied in the decree of June 24, 1970, were appropriate and pertinent in view of the prayers of the petition based on fraud and undue influence and for rescission of the two deeds.

2. So much of par. 5 of the decree as stated (a) that on January 28, 1966, Hurley owed Mrs. Hobbs a substantial amount "for unpaid personal services" and (b) that Hurley's "expressed intent . . . was not effectuated by the instruments prepared by his attorney," is justified by Mrs. Hobb's testimony. She undoubtedly performed many business and household services for Hurley and it could reasonably be concluded that she expected to be, and had not been, fully compensated.

3. The probate judge did not undertake to reform the deeds of January 28, 1966, to conform with Hurley's stated intention "that he wanted it so that if he died it would go to . . . [Mrs. Hobbs] and if she died it would go to him." [3] Any possibility that this intention can be thwarted (see fn. 3) has now ended because of Hurley's death, without any transfer by either joint tenant. The deeds (in the light of Hurley's death) now carry out his intention precisely. There is no occasion for reforming them. On the judge's subsidiary findings and conclusions (apart from the later portion of par. 5), the deeds must remain in full effect.

4. The decree is reversed. A new decree is to be entered dismissing the petition. Mrs. Hobbs is to have costs of this appeal.

*So ordered.*

---

[3] Such reformation would have been possible. See *Canedy* v. *Marcy*, 13 Gray, 373, 377; *Franz* v. *Franz*, 308 Mass. 262, 265–267. See also *Reder* v. *Kuss*, 351 Mass. 15, 17. It could have avoided a possible discrepancy between Hurley's intention and the deeds as executed, caused by the possibility (see *Attorney Gen.* v. *Clark*, 222 Mass. 291, 293) that Mrs. Hobbs, as joint tenant might have terminated the joint tenancy by transfer or conveyance of her interest. See *Marble* v. *Treasurer & Recr. Gen.* 245 Mass. 504, 507; *Weaver* v. *New Bedford*, 335 Mass. 644, 646; *Minnehan* v. *Minnehan*, 336 Mass. 668, 671; Davis, Massachusetts Conveyancers' Handbook (2d ed.) § 166; Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 61, 118; Park, Conveyancing, § 128.