HENRY MICKELSON vs. DAVID S. BARNET & others, trustees.[1]

Bristol.   September 12, 1983. — January 19, 1984.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & O'CONNOR, JJ.

*Embezzlement. Trust*, Constructive. *Jurisdiction*, Mistake, Reformation.
*Taxation*, Indebtedness to Federal government. *Assignment.*

The actions of an acknowledged embezzler in signing an instrument
    which, on its face, was a conveyance of his assets and the assets of
    members of his family to a trust for the benefit of his creditors, and in
    promising restitution to victims from whom he had embezzled money
    over a period of years amounted merely to representations regarding
    future conduct, rather than declarations as to the present status of the
    embezzled assets, and thus did not restore the constructive trust with
    which the embezzled property and its traceable proceeds had been im-
    pressed.  [790]
A standard form of trust agreement, which, on its face, was an acknowl-
    edged embezzler's conveyance of his assets to a trust for the benefit of
    his creditors, was to be reformed to reflect the parties' true intent, as
    evidenced by their stipulations and by their corroborative conduct in
    not notifying creditors, that the trust be for the benefit of victims of the
    embezzlement rather than creditors in general.  [791-792]
Although of the view that an acknowledged embezzler's transfer of his
    assets to trustees who were to distribute them to his victims was not
    such a transaction as would implicate Federal preference provisions of
    31 U.S.C. §§ 191, 192 (1976) so as to create a personal claim by the
    United States against the trustees for income taxes due from the embez-
    zler with respect to the embezzled funds, this court did not decide the
    issue in a case where the United States was not a party.  [793-796]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 23, 1981.

The case was reported by *Mone*, J., to the Appeals Court.
After review by that court, the Supreme Judicial Court
granted leave to obtain further review.

[1] Malcolm Jones, Harvey Mickelson, and Sidney Lansky.

*J. Thomas Price & Daniel D. Levenson* for the plaintiff.

HENNESSEY, C.J.  During the 1960's, Nathaniel Lipton, a certified public accountant in New Bedford, obtained large sums of money from the plaintiff and about seventy-five other persons, under the pretense of investing the money for them.  Lipton appropriated the funds to his own use, returning some newly acquired funds to the would-be investors as "interest."

On October 31, 1969, some of the victims discovered Lipton's scheme and, because they feared that he would flee the Commonwealth, obtained a ne exeat writ in the Superior Court in Bristol County.  They met with Lipton in the office of his attorney and threatened him with execution of the writ. He promised to turn over substantially all of his assets to them.

The next day, November 1, 1969, Lipton and his family executed an instrument which, on its face, is a conveyance of their assets to the defendants as trustees for the benefit of Lipton's creditors.[2]  The victims did not execute the ne exeat

---

[2] The instrument provides in pertinent part:  "This agreement made as of this 1st day of November, 1969, by and between NATHANIEL LIPTON and SHIRLEY LIPTON, of New Bedford, in the County of Bristol, Commonwealth of Massachusetts, individually and as natural parents and guardians of RONNIE S. LIPTON, and LAWRENCE LIPTON, of said New Bedford, hereinafter called 'DONORS', and DAVID S. BARNET, SIDNEY LANSKY, GEORGE JACOBS, of New Bedford, and MALCOLM JONES AND HARVEY MICKELSON, of Dartmouth, all in said County and Commonwealth of Massachusetts, hereinafter referred to as 'TRUSTEES'.

"WHEREAS NATHANIEL LIPTON acknowledges being indebted to various persons, firms and corporations and all of his assets are subject to being applied to said debts; and

"WHEREAS NATHANIEL LIPTON has assets subject to being applied to said debts, and LAWRENCE LIPTON, for himself, and SHIRLEY LIPTON, for herself, and NATHANIEL LIPTON and SHIRLEY LIPTON, for their minor child, RONNIE S. LIPTON, may have assets subject to being applied to said debts; and

"WHEREAS NATHANIEL LIPTON is unable to pay his said debts in full at this time and the DONORS, therefore, have a desire to make a fair distribution of NATHANIEL LIPTON'S assets and of such assets of the other DONORS as may be legally subject to being applied to NATHAN-

writ and permitted it to expire. Lipton thereupon left the Commonwealth, returning only to face trial for embezzlement and serve his sentence; he no longer resides in the Commonwealth.

On December 17, 1970, the Internal Revenue Service assessed deficiencies and civil fraud penalties totaling more than $555,000 against Lipton. The deficiencies were based entirely on Lipton's failure, in returns for the years 1963-1968 filed August 13, 1969, to report as income the sums taken from his victims. Litigation in the Tax Court resulted in a stipulated total deficiency of about $545,000. In 1977, some of the victims obtained a default judgment against Lipton in the amount of $855,000 plus interest and costs. The value of the trust assets is less than the amount of the Federal tax deficiency. The United States has demanded the assets of the trust, as a partial collection of the deficiency.

---

IEL LIPTON'S said debts among said creditors by applying said assets to the payment of said debts;

"NOW, THEREFORE, NATHANIEL LIPTON does hereby grant, convey and transfer all of his right, title and interest in and to all of his property of whatever kind and nature . . . except such property as is exempt from attachment under the laws of the Commonwealth of Massachusetts; and the other DONORS do hereby grant, convey and transfer all of their right, title and interest in and to all of their property which may be legally subject to being applied to said debts of NATHANIEL LIPTON . . . except such property as is exempt from attachment under the laws of the Commonwealth of Massachusetts.

"All to have and to hold unto the said TRUSTEES upon the trust and subject to the provisions and agreements hereinafter set out:

"1) The TRUSTEES agree to hold said assets subject to all taxes . . . which may be properly chargeable and enforceable against the assets hereby conveyed or which may hereafter be conveyed into this trust . . . and upon compliance with all the remaining terms and conditions of this Agreement and upon the TRUSTEES herein being satisfied that said tax liabilities are not chargeable against said assets, to distribute the same in accordance with the terms and provisions of this instrument. . . .

"5) The TRUSTEES shall pay, divide and distribute the residue of said monies, after paying all taxes and all other priorities due, among the remaining creditors in proportion to their claims, it being the express intention that the same shall be a partial payment of any outstanding liability and shall not serve as a satisfaction of the entire liability."

The plaintiff brought this action, in the Superior Court in Bristol County, against the trustees and the United States, seeking a declaration that the victims are entitled to the trust assets. The case was removed to the United States District Court for the District of Massachusetts, where the United States was dismissed by stipulation, and the case was remanded to the Superior Court. The victims of Lipton's embezzlement were certified as a class, the parties agreed upon a statement of facts, and the case was reported to the Appeals Court.. The Appeals Court decided that the tax claim of the United States is entitled to priority. 15 Mass. App. Ct. 918 (1983). We allowed the plaintiff's application for further appellate review. We conclude that, in so far as the law of the Commonwealth is concerned, the victims of the embezzlement are entitled to the assets of the trust.

The plaintiff argues: (1) that Lipton held the embezzled money and its traceable proceeds as a constructive trustee for the victims of the embezzlement; (2) that, although the assets held by Lipton in October of 1969 were not traceable proceeds, Lipton, by promising his assets to the victims, restored the constructive trust and subjected the assets thereto as of October 31, 1969; (3) that on November 1 Lipton held bare legal title to the assets; and (4) that, therefore, the instrument executed by Lipton conveyed only that legal title to the trustees.

We are unable to conclude that Lipton's promise to convey his assets to the victims amounted to a restoration of the constructive trust. We hold, however, that because the written conveyance did not reflect the intent of the parties and did not fulfil their prior oral agreement, the plaintiff is entitled to reformation of the instrument. Because the United States is not a party to this action, we are unable to make a binding determination whether, despite reformation, it is entitled to the assets under the Federal priority statute, 31 U.S.C. §§ 191, 192 (1976). We can decide only that as a matter of the law of the Commonwealth the victims of the embezzlement are entitled to the assets in the trust.

1. *Restoration of the constructive trust.* Lipton's conversion of the would-be investors' funds was an embezzlement, that is, the relationship between Lipton and the investors was that of agent and principal, not debtor and creditor. See *Commonwealth* v. *Anthony,* 306 Mass. 470, 476-477 (1940); *Commonwealth* v. *Hutchins,* 232 Mass. 285, 290-292 (1919). Consequently, Lipton became a constructive trustee of the money and its traceable proceeds. *National Mahaiwe Bank* v. *Barry,* 125 Mass. 20, 24 (1878). *Bresnihan* v. *Sheehan,* 125 Mass. 11, 13 (1878). However, the plaintiff does not attempt to trace the embezzled funds to the assets held by Lipton in 1969. Rather, he argues that Lipton, by acknowledging his defalcation and promising restitution, restored the constructive trust, and that the assets promised immediately became impressed with that trust. See *Perkins* v. *Perkins,* 134 Mass. 441 (1883); *Supreme Lodge of the Portuguese Fraternity* v. *Liberty Trust Co.,* 215 Mass. 27 (1913). In both of the cited cases a trustee converted trust property and then replaced it with property of his own. In both we held that beneficial interest in the new property was transferred to the beneficiary by the trustee's declaration to the beneficiary that he held the property in trust.

On the basis of the plaintiff's description of the events of October 31, 1969, we conclude that a restoration of the trust did not occur. We think the actions of Lipton on October 31 amounted merely to a promise, and not a declaration. The plaintiff's complaint states that Lipton "agreed . . . to turn over" his property to the victims. This is clearly a representation regarding future action, not present status. That the parties themselves did not believe that the beneficial interest in the assets had been transferred is demonstrated by their undertaking, the very next day, steps that purported to transfer that beneficial interest. Their belief is indicative of their intent, and there could be no transfer of the beneficial interest without an intent to transfer it. See *Berger* v. *Berger,* 333 Mass. 540, 544 (1956). Thus we conclude that Lipton's promise to convey his assets to the victims did not restore the constructive trust.

2. *Reformation of the instrument.* The parties have stipulated that the instrument executed by Lipton was "a standard form trust agreement which was available . . . at that moment," and was used because "time was of the essence," that none of the parties "at any time intended that the assets paid over to the trustees were for the benefit of the general creditors of Lipton," and that "it was always intended by Lipton and the defendants that the victims of his embezzlement be made as whole as possible from the transferred assets." From these facts, the plaintiff argues that the choice of this form of trust instrument was a mistake, and that, in so far as it purports to give rights to Lipton's general creditors, it should not be given legal effect.

We treat this argument as a request for reformation of the instrument, and we consider whether that remedy is available in these circumstances. The plaintiff claims that the language adopted by the parties did not reflect their true intent. Such a mutual mistake is reformable. See, e.g., *Reder* v. *Kuss,* 351 Mass. 15 (1966); *White* v. *White,* 346 Mass. 76 (1963); *Franz* v. *Franz,* 308 Mass. 262 (1941); *Dickman* v. *McClellan,* 302 Mass. 87 (1939); *Keith* v. *Thomas,* 266 Mass. 566 (1929); *J.P. Eustis Mfg. Co.* v. *Saco Brick Co.,* 198 Mass. 212 (1908). See also *Hurley* v. *Hobbs,* 360 Mass. 618, 620-622 & n.3 (1971); *Eno* v. *Prime Mfg. Co.,* 317 Mass. 646 (1945). It is immaterial that the mistake may be characterized as a mistake of law.[3] There has never been a rule that equity will afford relief only in case of mistake of fact. *Reggio* v. *Warren,* 207 Mass. 525, 533-535 (1911). Indeed, the opposite was recognized in 1859 by

---

[3] Many of the cases contain broad statements to the effect that equity will not grant relief from mistakes of law. E.g., *Coolidge* v. *Loring,* 235 Mass. 220, 224 (1920); *Wheaton Bldg. & Lumber Co.* v. *Boston,* 204 Mass. 218, 226 (1910); *Taylor* v. *Buttrick,* 165 Mass. 547, 550 (1896); *Rice* v. *Dwight Mfg. Co.,* 2 Cush. 80, 87 (1848); see *Reggio* v. *Warren,* 207 Mass. 525, 533 (1911). But these statements generally appear as dicta in cases in which the mistake was unilateral, e.g., *Wheaton Bldg. & Lumber Co.* v. *Boston, supra*; *Rice* v. *Dwight Mfg. Co., supra,* or in which the mistake was failure to foresee a particular contingency, e.g., *Coolidge* v. *Loring, supra;* see *Keyes* v. *Carleton,* 141 Mass. 45, 50 (1886).

this court in an opinion by Chief Justice Shaw. See *Canedy* v. *Marcy*, 13 Gray 373, 377 (1859).

The parol evidence rule is no bar to the consideration of extrinsic evidence of intent when mistake is alleged. *Reder* v. *Kuss, supra* at 17. *Martin* v. *Jablonski*, 253 Mass. 451, 453 (1925). *Goode* v. *Riley*, 153 Mass. 585, 587 (1891). Traditionally, we have required that a party present "full, clear, and decisive" proof of mistake in order to be entitled to reformation. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 317 (1871). *Kennedy* v. *Poole*, 213 Mass. 495, 498 (1913). *German Am. Ins. Co.* v. *Davis*, 131 Mass. 316, 316 (1881). In the instant case the "proof" consists largely of the stipulations of the parties that the instrument does not reflect the intent of the parties and that an assignment for the benefit of creditors in general was not intended. However, the parties' failure to perform the procedures regarding notice to creditors, which generally attend an assignment for the benefit of creditors, see G. L. c. 203, § 41, tends to corroborate the parties' stipulation. See *Childs* v. *Harbor Lounge of Lynn, Inc.*, 357 Mass. 33, 35 (1970). Under the circumstances, we consider the proof sufficient to warrant reformation.

We conclude that the legal effect of the instrument was to convey the Lipton family's assets[4] in trust for the victims of Lipton's embezzlement, and that the plaintiff is entitled to reformation of the instrument.[5]

---

[4] We see no pertinent distinction between interests conveyed by Lipton, on the one hand, and by the members of his family, on the other.

[5] In reforming the instrument, the primary concern will be to substitute a description of the victims for the description of Lipton's general creditors in the second paragraph of the instrument. The conclusions of the Appeals Court notwithstanding, we see no need to eliminate the priority for taxes established in paragraph 1). We construe the phrase "properly chargeable and enforceable against the assets" to mean secured by an existing lien. A Federal tax lien does not arise until assessment, see 26 U.S.C. § 6321 (1976); *Detroit Bank* v. *United States*, 317 U.S. 329, 335 (1943), and the taxes in question were not assessed until more than a year after the conveyance. At the time of the conveyance, the taxes were enforceable only against Lipton personally, not against any of his specific assets. Nevertheless, we leave the formulation of the decree to the parties and the Superior Court.

3. *The Federal Law.* The Supreme Court of the United States has decided that embezzled sums are taxable income. *James* v. *United States*, 366 U.S. 213 (1961). The taxes imposed on Lipton's embezzlement income and the penalties for his failure to report it were a debt owed to the United States before the date of the instrument. See *United States* v. *Moore*, 423 U.S. 77 (1975); *Price* v. *United States*, 269 U.S. 492 (1926); *United States* v. *Coyne*, 540 F. Supp. 175, 179 (D.D.C. 1981); *United States* v. *Rome*, 414 F. Supp. 517, 518 (D. Mass. 1976); *United States* v. *58th St. Plaza Theatre, Inc.*, 287 F. Supp. 475, 496, 501 (S.D.N.Y. 1968). Thus, if the instrument executed by Lipton were effective according to its terms, that is, as an assignment for the benefit of creditors in general, then the United States would be entitled to the assets under 31 U.S.C. §§ 191, 192 (1976).[6] There is no exception for situations in which the United States is competing as a creditor with victims of a taxpayer's embezzlement. Cf. *James* v. *United States, supra* (at 228, Black, J., concurring in part and dissenting in part; at 252, Whittaker, J., concurring in part and dissenting in part; both Justices lamented the injury to embezzlement victims inflicted by the Court's decision).

---

[6] 31 U.S.C. § 191 provides: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

31 U.S.C. § 192 provides: "Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

Sections 191 and 192 were reformulated as 31 U.S.C. § 3713 by Pub. L. No. 97-258, § 1, 96 Stat. 877, 972 (1982). They had existed in substantially unchanged form since 1799. See *King* v. *United States*, 379 U.S. 329, 334-336 (1964).

Although Lipton's conveyance did not operate as an assignment for the benefit of creditors in general, it can be argued that a Federal priority under § 191 arose by virtue of the conveyance; that even if the conveyance was not a "voluntary assignment" within the meaning of § 191, it was a preferential transfer, an act of bankruptcy sufficient to trigger the priority. See, e.g., *United States* v. *Whitney*, 654 F.2d 607, 610 (9th Cir. 1981); *United States* v. *Gotwals*, 156 F.2d 692, 695 (10th Cir.), cert. denied, 329 U.S. 781 (1946); *United States* v. *58th St. Plaza Theatre, Inc., supra* at 496. However, a Federal priority under § 191 is not a lien on the property transferred. See *Bramwell* v. *United States Fidelity & Guar. Co.*, 269 U.S. 483, 488 (1926); *Conrad* v. *Atlantic Ins. Co.*, 26 U.S. (1 Pet.) 386, 438 (1828); *United States* v. *Fisher*, 6 U.S. (2 Cranch) 358, 390 (1805); *Otis* v. *Warren*, 16 Mass. 53, 56-57 (1819). The United States has, at best, a personal claim against the trustees under § 192.[7]

The scope of the applicability of § 192 has not been clearly delineated by the Federal courts. If the transfer was a "voluntary assignment" under § 191, then the trustees may be liable as "assignees" under § 192. But a transfer for the benefit of specific creditors, not creditors in general, may not be a "voluntary assignment." See *United States* v. *McLellan*, 26 F. Cas. 1127, 1130-1131 (C.C.D. Me. 1838) (No. 15,698); *United States* v. *Mott*, 27 F. Cas. 6 (C.C.S.D. N.Y. 1822) (No. 15,826); *Bouchaud* v. *Dias*, 1 N.Y. 201 (1848); *Commonwealth* v. *Phoenix Bank*, 11 Met. 129, 151-152 (1846). But see *United States* v. *Hooe*, 7 U.S. (3 Cranch) 73 (1805); *United States* v. *Marshal of the Dist. of N.C.*, 26 F. Cas. 1173 (C.C.D. N.C. 1833) (No. 15,727). And the trustees, who have no discretion in the disposition

---

[7] If the transfer is voidable at the behest of creditors under State law, then the United States, as the highest priority creditor, can assert its claim against the transferee, to the extent of the value of the property transferred. See *United States* v. *58th St. Plaza Theatre, Inc.*, 287 F. Supp. 475, 497-499 (S.D.N.Y. 1968). The transfer at issue was neither a voidable preference nor a fraudulent conveyance and is not voidable under the law of the Commonwealth. *Goldstein* v. *Columbia Diamond Ring Co.*, 366 Mass. 835 (1975).

of Lipton's assets, do not seem to represent him in such a way that they should be liable as "other persons" under § 192. See *King* v. *United States*, 379 U.S. 329, 337 (1964); *Bramwell* v. *United States Fidelity & Guar. Co.*, *supra* at 490. If Lipton had conveyed his assets directly to his victims, presumably the United States would have no claim under § 192. See *Bush* v. *United States*, 14 F. 321 (C.C.D. Or. 1882); *United States* v. *McLellan*, *supra* at 1130; *United States* v. *Sullivan*, 19 F. Supp. 695, 699 (W.D.N.Y. 1937), aff'd 95 F.2d 1021 (2d Cir. 1938). Under the circumstances, the use of the trustees as intermediaries does not implicate the policies underlying § 192, and should not change the result.

The language of § 192 does not require that it be applied to this case. To apply it here would work a "grave injustice" on the victims "merely because someone has stolen [their] money." *James* v. *United States*, 366 U.S. 213, 228 (1961) (Black, J., concurring in part and dissenting in part). There is enough play in the joints of the statute to permit consideration of the equities of the case. And in this case, where the tax claim of the United States is based solely on the "income" that Lipton embezzled from his victims, the equities are loud and clear.

We think that the trustees should be able to distribute the assets to Lipton's victims without being held personally liable to the Federal government under § 192. But we are not in a position to decide that question. The Federal priority is a matter of Federal law. E.g., *United States* v. *Lebanon Woolen Mills Corp.*, 241 F. Supp. 393, 398 (D.N.H. 1964). The United States is not a party to this proceeding and cannot be bound by our decision. The Internal Revenue Service could collaterally attack or, indeed, ignore our decision, and a State court judgment cannot insulate the trustees from liability under § 192. *Field* v. *United States*, 34 U.S. (9 Pet.) 182, 200-201 (1835). See *County of Spokane* v. *United States*, 279 U.S. 80, 89-90 (1929). Therefore, we do not order the trustees to distribute the trust fund to the plaintiff class. We merely declare that, as a matter

of the law of the Commonwealth, the plaintiffs are entitled to the assets.

The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*